## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| In re: | Jointly Administered Under |
| BLUE SUN SCIENTIFIC, LLC, | Case No. 25-17998-DER (Lead Case) |
| THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD, | Case No. 25-18000-DER |
| Debtors. | Chapter 11 |

### OBJECTION TO APPLICATION FOR AUTHORITY TO EMPLOY
### SMITH DUGGAN CORNELL & GOLLUB LLP
### <u>AS SPECIAL COUNSEL FOR DEBTOR</u>

KPM Analytics North America Corporation ("<u>KPM</u>"), by and through undersigned counsel, files its Objection to Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel for Debtor ("<u>Objection</u>") and in support states as follows:

### <u>Introduction</u>

1.      This case is a two-party dispute between KPM, and the jointly administered debtors Blue Sun Scientific, LLC ("<u>Blue Sun</u>") and The Innovative Technologies Group & Co., LTD ("<u>ITG</u>" together with Blue Sun, the "<u>Debtors</u>").  The Debtors are using this case as an unlawful mechanism to obtain a bondless appeal of the multi-million-dollar monetary judgment entered against them by the United States District Court for the District of Massachusetts.  Based on the Debtors' pre- and post-petition conduct and submissions to this Court, it is clear that the *sole* purpose of the Debtors' bankruptcy is to improperly invoke the protection of the automatic stay as a shield to stop KPM's collection efforts while simultaneously pursuing an appeal of that judgment as a sword to eliminate the very reason for the Debtors' claimed insolvency.

1

2.      Not only does Blue Sun's Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel to Debtor [Dkt. No. 17] (the "Application") *admit* that the Debtors' primary motivation in this case is the continuation of the Appeal (defined below),[1] but the Application and ITG's other pleadings explain that their ordinary course operations are profitable, that all payments to ITG's secured creditor were current through July 2025, that the Debtors were generally paying their debts as they came due, and that, but for KPM's judgment, the Debtors would have been able to operate without the intervention of this Court.[2]

3.      Moreover, within twelve (12) days of commencing the above-captioned case, the Debtors filed their respective Motion(s) for Relief from the Automatic Stay to Permit Continuance of Appellate Proceedings in the United States Court of Appeals for the First Circuit [Case No. 25-18000, Dkt. No. 21; Case No. 25-17998, Dkt. No. 11] (the "Motion for Relief from Stay").  Twelve days does not provide the breathing spell offered by the Bankruptcy Code, but is further evidence that the sole purpose of this case is to exploit the protections of the automatic stay without complying with the otherwise applicable requirements of the Federal Rules of Civil Procedure.[3]

4.      Beyond this abuse of the protections of the automatic stay, KPM objects to the Application on the grounds that the Debtor cannot meet the standard described in Section 327(e) because Special Counsel's employment is not limited to a discrete special purpose, and Special Counsel holds an improper adverse interest.  Indeed, Smith Duggan Cornell & Gollub LLP ("Special Counsel") ***is a creditor of the Debtors' estates*** and is owed $99,000 for legal services

---

[1] *See* Application at ¶ 18 ("The single most important part of the Debtors' reorganization efforts is the pursuit of their appeal.").

[2] *See* Consent Motion for Entry of Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Sandy Spring Bank, a Division of Atlantic Union Bank, Pursuant to 11 U.S.C. § 363 [Case No. 25-18000, Dkt. No. 15]; Application at ¶ 16.

[3] The Motion for Relief from Stay was withdrawn at [Dkt. No. 14] pending a ruling on the Application.

performed pre-petition.  Thus, employment of Special Counsel should be governed by the more rigorous standard of Section 327(a), which the Debtors also cannot meet due to Special Counsel's status as a pre-petition creditor.  As such, the Application should be denied and Special Counsel should be disqualified from representing the Debtors during the pendency of this bankruptcy case.

### Background

5.      On or about August 29, 2025, the Debtors commenced the above-captioned cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.

6.      On or about September 10, 2025, ITG filed its Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel for Debtor [Case No. 25-18000, Dkt. No. 19].  KPM filed a similar objection to ITG's application to employ Special Counsel.  *See* [Case No. 25-18000, Dkt. No. 33].

7.      On or about September 29, 2025, Blue Sun filed its Application, which is substantially similar to ITG's application.

8.      This bankruptcy case follows KPM's successful prosecution of claims against the Debtors for misappropriation of trade secrets, tortious interference, and statutory violations for unfair trade practices in the United States District Court for the District of Massachusetts in the case styled as *KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al.*, Case Number 4:21-cv-10572-MRG (D. Mass.) (the "Massachusetts Case").

9.      In February 2025, following a 9-day jury trial, the U.S. District Court for the District of Massachusetts entered a permanent injunction and monetary judgments against ITG and Blue Sun, jointly and severally, in the principal amount of $3 million, plus an additional judgment against ITG in the amount of $3.6 million, plus an additional $1.5 million in attorneys'

fees, over $271,000 in costs, as well as pre- and post-judgment interest.  A copy of the Final

Judgment and Permanent Injunction ("Judgment") is attached as **Exhibit A**.

10.     On March 4, 2025, the Debtors noted an appeal to the United States Court of

Appeals for the First Circuit, commencing case number 25-1222 (the "Appeal").

11.     Neither of the Debtors sought a stay of enforcement pending appeal, despite the

familiar procedure available under the Federal Rules of Civil Procedure – namely, by posting a

*supersedeas* bond.  *See* Fed. R. Civ. P. 62(b).

12.     Shortly after KPM registered the judgment in this District and began enforcement

efforts, the Debtors filed bankruptcy.  *See KPM Analytics North America Corp. v. Blue Sun*

*Scientific, LLC, et al.*, Case No. 25-mc-474 (D. Md.) (filed July 30, 2025) and, in particular, Dkt.

Nos. 64, 65, 66 (August 21, 2025 Orders directing ITG, Blue Sun, and their principal Robert

Wilt to appear for examination).

### Legal Standard

13.     Section 327 of the Bankruptcy Code governs, *inter alia*, a debtor in possession's

retention of professionals in its bankruptcy case.  "This provision is intended to ensure 'that all

professionals . . . tender undivided loyalty and provide untainted advice and assistance in

furtherance of their fiduciary responsibilities.'"  *In re Johnson*, 312 B.R. 810, 819 (E.D. Va.

2004) (quoting *Rome v. Branstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

14.     The Application is filed under Section 327(e), which provides:

> The trustee, with the court's approval, may employ, for a specified
> special purpose, other than to represent the trustee in conducting
> the case, an attorney that has represented the debtor, if in the best
> interest of the estate, and if such attorney does not represent or
> hold any interest adverse to the debtor or to the estate with respect
> to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

15.    Section 327(e) provides a lower threshold for employing legal counsel than Section 327(a).  For example, special counsel is not required to be a disinterested person under Section 327(e).  11 U.S.C. § 327(e).  However, retention of counsel under Section 327(e) must be for a specified special purpose, meaning "the trustee is not permitted to use this section to employ counsel to assist him in the general administration of the estate."  *In re Roper and Twardowsky, LLC*, 566 B.R. 734, 750 (Bankr. D.N.J. 2017).

16.    An "adverse interest" has been held to exist when a professional (1) possesses or asserts any economic interest that would tend to lessen the value of the estate or that would create either an actual or potential dispute in which the estate is a rival claimant or (2) possesses a predisposition under circumstances that render such a bias against the estate.  *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 314 (Bankr. S.D.N.Y. 2016).

17.    "When the 'adverse interest' specter looms like a dark cloud over a professional's employment under § 327(e), the court must closely scrutinize the proposed 'special purpose' for that employment before it can properly consider the 'adverse interest' and 'best interest of the estate' tests."  *In re Running Horse, L.L.C.*, 371 B.R. 446, 452 (Bankr. E.D. Cal. 2007) (citations omitted).  The court may look at the totality of the circumstances to determine whether the scope of work will, or has been, properly limited to a special purpose within the meaning of § 327(e), including the actual services performed by counsel before and after commencement of the case.  *Id.*

18.    If proposed counsel cannot meet the standards of Section 327(e), they can only be employed through Section 327(a), which provides –

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not

> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11 U.S.C. § 327(a).

19.     The term "disinterested person" means, among other things, a person that "is not a

creditor, an equity security holder, or an insider."  11 U.S.C. § 101(14).

<u>Argument</u>

**I.   <u>The Entire Bankruptcy Case is Tainted by the Debtors' Abuse of the Automatic Stay</u>.**

20.     The Debtors' attempt to obtain a bondless appeal through these bankruptcy cases

constitutes an abuse of the protections provided by the automatic stay.  The Judgment is the

origin of the Debtors' cited financial troubles, which was entered after the District of

Massachusetts found ITG and Blue Sun liable for misappropriation of trade secrets, tortious

interference, and statutory violations for unfair trade practices.  The Debtors' filings admit that

their sole motivation for filing this case is to overturn the Judgment through the pursuit of the

Appeal.  The protections provided by the automatic stay allow the Debtors to continue their goal,

while simultaneously preventing all other creditors from exercising their rights.  The automatic

stay should not be used as both a sword and shield in this manner.

21.     At its core, this case is a two-party dispute between KPM and the Debtors.  "Two-

party disputes (where the two sides are a single creditor on one side and the debtor, its

management and owners on the other) are not appropriate vehicles for invoking the Bankruptcy

Code's chapter 11 provisions."  *In re N. Vermont Assocs., L.P.*, 165 B.R. 340, 343 (Bankr.

D.D.C. 1994).  Notably bankruptcy was not the sole option available to the Debtors, and they

could have obtained the benefit that the automatic stay provides through different means.

Federal Rule 62(b) provides in part: "[a]t any time after judgment is entered, a party may obtain

6

a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). The Debtors made no attempt to obtain a stay pending appeal prior to filing bankruptcy. As such, the Debtors' actions constitute an abuse of the protections provided by the automatic stay particularly when their ordinary course operations are profitable.

**II. The Debtors Cannot Satisfy the Requirements to Appoint Special Counsel.**

22.     For the reasons discussed below, the Debtors cannot meet the requirements of Section 327(e) or (a) and the Application should be denied. The proposed employment of Special Counsel is inappropriate under Section 327(e) because Special Counsel's proposed role is not limited to a discrete, special purpose, but rather is integral to representing the debtors-in-possession in the administration of the case, as it involves prosecuting the Appeal – a de facto objection to KPM's claim – which directly impacts the estate's largest creditor, KPM. Moreover, Special Counsel holds an adverse interest because it is a significant pre-petition creditor with a substantial financial interest in the outcome of the Appeal. Further, employment of Special Counsel cannot meet the more rigorous standard of Section 327(a) because it is not a disinterested person due to its pre-petition claim against the estate. As such, the Application should be denied accordingly.

> *A.  Employment of Special Counsel Under Section 327(e) is Inappropriate Because the Scope of Special Counsel's Role is Not for a Discrete Special Purpose; Rather, Special Counsel Will Have a Role in Representing the Debtors in Conducting the Case.*

23.     Contrary to the express requirements of Section 327(e), Special Counsel's employment is not limited to a discrete special purpose, but, instead, will have a much broader application. Section 327(e) clearly and unequivocally allows employment of special counsel only for a "specified special purpose other than to represent the trustee in conducting the case." 11 U.S.C. § 327(e).

24.     KPM intends to file a proof of claim based on the Judgment.  The Appeal is the Debtors' primary vehicle to challenge the Judgment's validity and basis and thus functions as an informal objection to KPM's forthcoming claim.

25.     By prosecuting the Appeal, Special Counsel is in effect performing an essential estate function – prosecuting a claim objection.  Because claim objections are integral to representing the Debtor in conducting the case, and given the immense importance the Appeal is to the Debtors' case, Special Counsel's employment should be governed by Section 327(a), not Section 327(e).

26.     The Debtors should not be permitted to circumvent the requirements of Section 327(a) by designating the Appeal (i.e. the **_sole purpose of the case_**) as a "special purpose." Furthermore, absent the bankruptcy case _Special Counsel would be making all litigation decisions_.  By seeking to continue the Appeal, the Debtors are essentially handing control to Special Counsel, effectively eclipsing bankruptcy counsel.  Special Counsel, not bankruptcy counsel, would be directing the case.

27.     Caselaw from sister courts supports analyzing the Application under Section 327(a) over Section 327(e) in this situation.  In _In re Neuman_, 138 B.R. 683, 684-85 (S.D.N.Y. 1992), a Chapter 7 trustee sought to employ a law firm as special counsel to assist the trustee with litigation concerning medically related claims asserted by the United States – the largest creditor in the case – through the Department of Health and Human Services.  The bankruptcy court approved the employment pursuant to Section 327(e).  _Id._ at 685.  On appeal, the district court reversed, holding the proposed counsel's employment was too closely related to conducting the case to warrant appointment pursuant to Section 327(e).  _Id._ at 686.

28.     The district court explained that the proposed firm's work straddled both a "special purpose" under Section 327(e) and case administration under Section 327(a). *Id.* at 686. The court thus concluded: "[w]e think it is clear both from the language of § 327(e) and from the framework of § 327 more generally that, even if there is a special purpose, it is crucial that the appointment not be part of the trustee's general duty of conducting the case." *Id.*

29.     The court supported this conclusion for two reasons. First, the plain text of Section 327(e) rules out special purposes that involve representing the trustee in conducting the case. *Id.* at 686. Second, disinterestedness is a requirement for anyone representing the trustee in conducting any part of the case per Section 327(a). *Id.* Specifically, the court writes:

> There is no reason to suppose that disinterestedness is any less important when only some of the claims are being evaluated than it is when all of the claims are being evaluated. The need for disinterestedness is apparent from the situation here, where [proposed counsel] is a pre-petition creditor and the total claims exceed the total debts, so that [proposed counsel] has a financial interest in casting doubt on the validity of any other creditor's claim. We note that in the more typical § 327(e) appointment, special counsel is employed in litigation that would have the effect, if successful, of increasing or preserving the estate's assets for *all* prepetition creditors. By contrast, investigation of the Government's claims in this case would have the potential to increase the returns of some creditors (including [proposed counsel]), at the expense of one creditor (the Appellant).

*Id.* (emphasis in original).

30.     Thus, because the proposed engagement was intertwined with conducting the case, the court required employment under Section 327(a). *Id.* at 686.

31.     The court in *In re Argus Group 1700, Inc.*, 199 B.R. 525 (Bankr. E.D.Pa. 1996), reached a similar conclusion. In *Argus*, the debtor sought to retain its pre-petition counsel under Section 327(e) to continue litigation against its limited partner and certain related entities. *Id.* at 528. The limited partner objected, arguing *inter alia* that employment of special counsel should

9

be governed by Section 327(a) given the broadly contemplated role of special counsel as detailed in the application to employ. *Id.* at 530. The court agreed and applied Section 327(a), emphasizing that: (1) the continuation of pre-petition litigation was the dominant driver of the case, (2) the debtor had few creditors amongst which a reorganization could be structured, (3) secured obligations were current, and (4) the debtor intended to resume litigation immediately after filing. *Id.* at 530-531. Concluding that litigation was "preeminent" and proposed litigation counsel the primary legal advisor rather than bankruptcy counsel, the court held that the stricter Section 327(a) standard governed the proposed employment. *Id.* at 531.

32. Here, Special Counsel's role is so intertwined with representing the Debtors in the bankruptcy case that its employment should be governed by Section 327(a). Special Counsel will be prosecuting a de facto claim objection through the Appeal and, therefore, has the potential to eclipse bankruptcy counsel as the primary legal advisor given the Debtors' interests in the Appeal. As such, the Debtors cannot meet the special purpose requirement of Section 327(e), and an analysis of employment pursuant to Section 327(a) is more appropriate.

**B. Employment of Special Counsel under Section 327(e) Should Be Denied Because Special Counsel Holds an Adverse Interest to the Estate and Has an Improper Financial Motivation.**

33. Special Counsel holds an adverse interest to the estate through its status as a pre-petition creditor and has a financial interest in prosecuting the Appeal. Blue Sun's Schedule E/F [Dkt. No. 1] lists total unsecured claims of $6,329,907.63 of which $18,571.45 is scheduled as priority, and the remaining $6,311,336.18 is scheduled as general unsecured debt. KPM's Judgment is scheduled at a value of $4,579,454.53 in Schedule E/F, which is 73% of Blue Sun's *total* unsecured debt. KPM's Judgment is the largest scheduled unsecured claim against Blue Sun, and it should be noted that Blue Sun has no secured debt. Special Counsel holds the fourth

10

largest unsecured claim scheduled against Blue Sun.  Per the Application and Schedule E/F, Special Counsel is owed $99,000 for pre-petition legal services.

34.    Special Counsel has a substantial financial interest in overturning the Judgment. If the Judgment is vacated, the likelihood that Special Counsel will be paid in full on its pre-petition claim markedly increases.  Eliminating a $4,579,454.53 claim against a debtor that is otherwise paying its debts as they come due materially enhances Special Counsel's prospects of full payment for its pre-petition legal services.  Accordingly, Special Counsel is motivated to increase its own recovery at the expense of a single creditor, KPM.  It is wholly inappropriate to allow a law firm with such a large incentive to undercut KPM's Judgment to represent the Debtors.

35.    Additionally, given Special Counsel's competing interest to increase the amount of a distribution to unsecured creditors for its own benefit, there is a meaningful incentive for Special Counsel to withhold advising the Debtor on a course of conduct if it could result in an unfavorable outcome for Special Counsel.  The requirements of Section 327 are intended to ensure that all professionals tender undivided loyalty and provide untainted advice and assistance to the Debtors in furtherance of their fiduciary duties.  *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994).  As such, employment pursuant to Section 327(e) should be denied because Special Counsel possesses an adverse interest against the estate, and is inappropriately financially motivated to overturn the Judgment.

### C. Special Counsel Cannot Meet the Requirements of Section 327(a) Because it is Not Disinterested; Accordingly, Employment Must be Denied.

36.    Special Counsel cannot meet the standard set in Section 327(a) because it is a pre-petition creditor.  Section 327(a) expressly disqualifies counsel that is not a disinterested person from representing the debtor.  11 U.S.C. § 327(a).  The term "disinterested person" means,

among other things, a person that "is not a creditor, an equity security holder, or an insider." 11 U.S.C. § 101(14). The Debtors' schedules list Special Counsel as a creditor, which plainly disqualifies them from representing the Debtors pursuant to Section 327(a). As such, the Application should be denied pursuant to Section 327(a).

37.     Additionally, it is worth noting that Special Counsel received preferential treatment in the months leading up to the bankruptcy case to the detriment of other creditors. Blue Sun's Statement of Financial Affairs [Dkt. No. 1] reveal that **Special Counsel received payments totaling $80,000.00 in the two months leading up to the bankruptcy case**. Evidently the Debtors deemed it acceptable to pay Special Counsel for *its* legal services, yet left their *other pre-petition counsel*, Seyfarth Shaw and Kroll, LLC, without payment. Nor did the Debtors make any attempt to satisfy the Judgment owed to KPM. Blue Sun paid Special Counsel over other similarly situated unsecured creditors, which constitutes a preference under the Bankruptcy Code. The existence of a preference claim by the estate against Special Counsel further supports KPM's argument that Special Counsel holds an adverse interest to the estate and is not a disinterested person under Section 327(a).

38.     In the event employment of Special Counsel is approved, KPM reserves its right to object to all applications for payment of its attorney's fees.

## Conclusion

39.     KPM respectfully requests that the Application be denied for the reasons stated in this Objection. KPM also requests that a hearing on this Objection be scheduled for October 29, 2025 at 2 pm to coincide with the hearing already scheduled for KPM's objection to ITG's Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel

for Debtor [Case No. 25-18000, Dkt. No. 19] given the substantial overlap in facts and legal argument.

WHEREFORE, KPM respectfully requests the Court enter an order denying the Application, disqualifying Special Counsel from representing the Debtors during the pendency of this bankruptcy case, and granting KPM such other relief the Court deems proper.

Dated October 13, 2025                              Respectfully submitted,

                                                    */s/ Addison J. Chappell*
                                                    Addison J. Chappell, Esquire (#21852)
                                                    Michael B. Brown, Esquire (#19641)
                                                    MILES & STOCKBRIDGE P.C.
                                                    100 Light Street, 7th Floor
                                                    Baltimore, MD 21202
                                                    Telephone: (410) 385-3481
                                                    Telephone: (410) 385-3663
                                                    achappell@milesstockbridge.com
                                                    mbbrown@milesstockbridge.com

                                                    *Counsel for KPM Analytics*
                                                    *North America Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 13, 2025, a copy of the foregoing Objection together with the exhibit and proposed order was served on all parties requesting service in this case via this Court's CM/ECF electronic noticing system as follows:

- **Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
- **Michael Benjamin Brown**   mbbrown@milesstockbridge.com, jdiaz@milesstockbridge.com
- **Addison J. Chappell**   achappell@milesstockbridge.com
- **Michael David Nord**   mnord@gebsmith.com
- **Jeffrey M. Orenstein**   jorenstein@wolawgroup.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV
- **Timothy VanCisin**   tvancisin@gebsmith.com
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email


/s/ Addison J. Chappell
Addison J. Chappell