UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| BLUE SUN SCIENTIFIC, LLC | * | No.  25-17998-DER<br>Chapter 11 |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| IN RE: | * | |
| THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD | * | No.  25-18000-DER<br>Chapter 11 |
| | * | |
| Debtor | | Jointly Administered under Case No. 25-17998-DER |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STIPULATIONS OF FACT FOR HEARING ON
DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY SMITH
DUGGAN CORNELL & GOLLUB LLP AS SPECIAL COUNSELFOR DEBTORS

Blue Sun Scientific, LLC ("Blue Sun") and The Innovative Technologies Group & Co, LTD ("ITG") (collectively, the "Debtors") and KPM Analytics North America Corporation ("KPM"), by their respective undersigned counsel, submit these Stipulation of fact for use at the hearing on the Debtors' Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel for Debtors (the "Applications") and KPM's objections thereto.

1. Prior to the filing of the Debtors' bankruptcy cases, on April 5, 2021, KPM sued the Debtors in the United States District Court for the District of Massachusetts (the "Massachusetts Court"), in the case styled as <u>KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al.</u>, Case Number 4:21-cv-10572-MRG (D. Mass.) (the "Massachusetts Case").  In the Massachusetts Case, KPM asserted claims against the Debtors and a number of

individuals (collectively the "Defendants") including claims for misappropriation of trade secrets, tortious interference, and statutory violations for unfair trade practices.

2.  In the course of the Massachusetts Case, the Defendants asserted that the Massachusetts Court did not have jurisdiction to adjudicate KPM's claims because, among other things, neither the Debtors nor any of the other Defendants were located in the Commonwealth of Massachusetts, and there were no agreements between the parties or any of their predecessors that would have permitted jurisdiction to be proper in Massachusetts.  The Massachusetts Court rejected the jurisdiction argument, and the Massachusetts Case proceeded to trial.

3.  In February 2025, following a 9-day jury trial, the Massachusetts Court entered a permanent injunction and monetary judgments against ITG and Blue Sun, jointly and severally, in the principal amount of $3,000,000.00, plus an additional judgment against ITG in the amount of $3,600,000.00, plus an additional $1,500,000.00 in attorneys' fees, over $271,000.00 in costs, as well as pre- and post-judgment interest. A copy of the Memorandum and Order reflecting the Massachusetts Court's decision ("Memorandum Order") is attached hereto as **Exhibit 1** and is jointly offered into evidence by the parties.  A copy of the Final Judgment and Permanent Injunction ("Judgment") that was subsequently entered by the Massachusetts Court is attached hereto as **Exhibit 2** and is jointly offered into evidence by the parties.

4.  As explained in the Memorandum Order, the jury determined that Blue Sun had misappropriated at least some of KPM's trade secrets, that both Debtors had tortiously interfered with KPM's contractual relationships, and found that both Debtors willfully or knowingly engaged in unfair or deceptive practices.

5.  Following the entry of the Judgment, Defendants, continuing to believe that the Massachusetts Court lacked jurisdiction over the Defendants, and also believing that the

Massachusetts Court had erred in connection with the substantive issues in the Massachusetts Case, consulted with Smith Duggan Cornell & Gollub LLP ("Smith Duggan") to take an appeal from the Judgment and on February 6, 2025, Smith Duggan sent Defendants their engagement agreement (the "Smith Duggan Agreement") to handle the appeal. A copy of the Smith Duggan Agreement is attached hereto as **Exhibit 3** and is jointly offered into evidence by the parties.

6. On March 4, 2025, the Debtors, represented by Smith Duggan, noted an appeal to the United States Court of Appeals for the First Circuit (the "First Circuit"), commencing case number 25-1222 (the "Appeal").

7. Neither ITG nor Blue Sun sought a stay of enforcement of the Judgment pending appeal, despite the procedure available under the Federal Rules of Civil Procedure – namely, by posting a supersedeas bond. See Fed. R. Civ. P. 62(b).

8. In the course of the Appeal, the First Circuit entered a series of Orders that required Defendants' opening Brief to be filed on September 3, 2025.

9. Smith Duggan undertook work to prepare the Brief in compliance with the First Circuit's briefing schedule.

10. On July 30, 2025, KPM registered the judgment in the United States District Court for the District of Maryland (the "Maryland Court") in the case styled KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al., Case No. 25-mc-474 (the "Maryland Case").

11. In the course of the Maryland Case, KPM sought and obtained Orders directing ITG, Blue Sun, and their principal Robert Wilt, to appear for examinations.

12. In the course of the Maryland Case, KPM also obtained Writs of Garnishment for the bank accounts that ITG and Blue Sun maintained with Sandy Spring Bank (the "Bank").

When the Writs of Garnishment were served on the Bank, the Bank froze the accounts and the Debtors were immediately unable to access the funds they had on deposit in their respective accounts.

13. With their accounts having been frozen and with no access to their funds, on August 29, 2025, the Debtors each commenced the above-captioned cases by filing a Voluntary Petition under Chapter 11 of the Bankruptcy Code. KPM has subsequently released its Writs of Garnishment post-petition.

14. Prior to the commencement of the litigation brought by KPM, the Debtors' ordinary course operations were profitable and the Debtors were generally paying their debts as they became due. Even after the entry of the Judgment, and prior to the collection action by KPM, the Debtors' ordinary course operations were profitable, and with the exception of the substantial legal fees that had been incurred in the course of the litigation, the Debtors were generally paying their secured obligations, their taxes, their lease payments, and their trade debt as those obligations became due. But for the garnishment of their bank accounts, the Debtors would have been able to continue to operate without the need to seek relief in this Court, just as they had since the entry of the Judgment.

15. A copy of the Petition, Schedules, and Statement of Financial Affairs ("SOFA") filed by Blue Sun is attached hereto as **Exhibit 4** and is jointly offered into evidence by the parties. A copy of the Petition, Schedules, and SOFA filed by ITG is attached hereto as **Exhibit 5** and is jointly offered into evidence by the parties.

16. On September 10, 2025, ITG filed its Application, accompanied by the Verified Statement of Dana Zakarian. A copy of the ITG Application and Verification is attached hereto as **Exhibit 6** and is jointly offered into evidence by the parties.

17. On September 29, 2025, Blue Sun filed its Application, accompanied by the Verified Statement of Dana Zakarian. A copy of the Blue Sun Application and Verification is attached hereto as **Exhibit 7** and is jointly offered into evidence by the parties.

18. As referenced in the Applications, the single most important part of the Debtors' reorganization efforts is the pursuit of the appeal.

19. As referenced in the Applications and Verified Statements, Smith Duggan is a creditor of the Debtors, and held substantial claims against the Debtors at the time the Petitions were filed. As set out in the Verified Statements, on or about March 20, 2025, Smith Duggan had received an initial retainer of $20,000.00 from Blue Sun. Pursuant to the terms of the Smith Duggan Agreement, the total retainer was to be $60,000.00 paid $20,000.00 per month. Smith Duggan received those funds from Blue Sun and applied them to open invoices. As of the date that the Petitions were filed, Smith Duggan had Invoiced the Debtors for services provided and had received a total of $118,896.70 from Blue Sun. This amount included the $60,000.00 retainer payments, which were applied against the invoices and exhausted. As of the date the Petitions were filed, Smith Duggan was owed $33,818.30 for services provided and invoiced to the Debtors and there was an estimated $65,000.00 in unbilled fees for Smith Duggan's services during the month of August.

20. Twelve (12) days after filing their Petitions, on September 10, 2025, the Debtors filed their Motion for Relief from the Automatic Stay to Permit Continuance of Appellate Proceedings in the United States Court of Appeals for the First Circuit (the "Lift Stay Motion").

21. The Debtors subsequently withdrew the Lift Stay Motion citing the filing of the pending Applications and the notion that it would be prudent to wait until after the employment

of special counsel had been approved before obtaining relief from the stay to pursue the Appeal in the First Circuit.

22. On October 7, 2025, this Court entered an Order Providing for Joint Administration of Cases [Case No. 25-17998, Dkt. No. 18] ("Joint Administration Order"), which provided for the joint administration of the Debtors' cases, with Blue Sun designated as the lead case and requiring that documents generally be filed in the Blue Sun case.

23. As of October 23, 2025, four (4) Proofs of Claim had been filed in the ITG case with the claims totaling $299,383.33. Of that amount, $11,571.65 were unsecured claims. A copy of the Claims Register as of October 23, 2025, from the ITG case is attached hereto as **Exhibit 8** and is jointly offered into evidence by the parties.

24. A copy of the Claims Register as of October 23, 2025, from the Blue Sun/ITG jointly administered case is attached hereto as **Exhibit 9** and is jointly offered into evidence by the parties. As reflected in **Exhibit 9**, six (6) Proofs of Claim have been filed, with the claims totaling $918,863.76. Of that amount, $619,480.43 represents claims filed solely against Blue Sun. The remaining four (4) claims are duplicates of those filed against ITG and have been docketed in the jointly administered Claims Register.

25. KPM believes the Massachusetts Court properly exercised jurisdiction and believes that the Judgment will be affirmed on appeal.

26. KPM has not yet filed its Proofs of Claim. Its claims, which continued to accrue interest after the Judgment was entered, make up nearly ninety percent (90%) of the unsecured claims against ITG, and seventy three percent (73%) of unsecured claims against Blue Sun.

27. Blue Sun does not have any secured creditors.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig,(#18071)
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com

Counsel for Blue Sun Scientific, LLC

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#7512)
Wolff & Orenstein, LLC
Shady Grove Plaza
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com

Counsel for The Innovative Technologies
 Group & Co, LTD

\s\ Addison J. Chappell
Addison J. Chappell (#21852)
MILES & STOCKBRIDGE P.C.
100 Light Street, 7th Floor
Baltimore, MD 21202
Telephone: (410) 385-3481
achappell@milesstockbridge.com

Counsel for KPM Analytics
 North America Corporation