UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| BLUE SUN SCIENTIFIC, LLC | * | No. 25-17998-DER<br>Chapter 11 |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| IN RE: | * | |
| THE INNOVATIVE TECHNOLOGIES<br>GROUP & CO., LTD | *<br>* | No. 25-18000-DER<br>Chapter 11 |
| Debtor | | Jointly administered under Case No.<br>25-17998-DER |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEBTORS' MOTION FOR ORDER EXTENDING EXCLUSIVE PERIODS TO
FILE PLANS OF REORGANIZATION AND OBTAIN ACCEPTANCES THERETO

Blue Sun Scientific, LLC ("Blue Sun") and The Innovative Technologies Group & Co, LTD ("ITG") (collectively, the "Debtors"), by their undersigned counsel, pursuant to 11 U.S.C. § 1121(d), jointly file this Motion for Order Extending Exclusive Periods to File a Plan of Reorganization and Obtain Acceptances Thereto (the "Motion") in these jointly administered cases and, in support thereof, respectfully represent as follows:

Jurisdiction and Venue

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory predicate for the relief sought herein is section 1121(d) of the Bankruptcy Code.

**DEBTORS' EXHIBIT 9**

4. On August 29, 2025 (the "Petition Date"), each of the Debtors filed a Voluntary Petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors are both continuing in possession of their property and the management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. By Order entered October 10, 2025, this Court authorized the joint administration of the Debtors' cases.

6. No statutorily authorized creditors' committee has been appointed by the Office of the United States Trustee in either of these jointly administered cases.

The Debtors, Their Business Operations, and the KPM Litigation

7. ITG is a corporation that was formed under the laws of the State of Maryland on June 5, 1997. Since that time, it has operated as a specialized manufacturer of process and quality control optical instruments serving the food and agriculture, packaging, and oil analysis industries. Several of the instruments it manufactures are sole-source critical, highly technical, devices and components for companies that the ITG has served for more than 25 years including any technological upgrades. ITG has designed, invented and manufactured successful NIR products for companies over the course of its 28 years in business. Including selling the Unity Scientific Spectrastar product line to Westco Scientific in 2008 ($5,000,000 in sales per year at peak). After the selling of the Unity Spectrastar product line in 2008, ITG focused on continuing to provide the sole-source components, along with manufacturing consumables used in various analytical instruments and being a unique service provider for a variety instrumentation including support for instruments dating back to 1997. Over the course of its existence, ITG and its employees have successfully patented at least five inventions that have been unique to the

**DEBTORS' EXHIBIT 9**

products provided to its customers. One of those patents was assigned to, and remains property of, ITG.

8. Blue Sun is a corporation that was formed under the laws of the State of Maryland on July 6, 2018. Since that time, it has served as the exclusive sales agent for ITG's products. ITG owns one hundred percent (100%) of the shares of Blue Sun and, for that reason, ITG and Blue Sun file consolidated tax returns.

9. Both ITG and Blue Sun were running successful operations until they became involved in litigation (the "KPM Litigation") with KPM Analytics North America Corporation ("KPM"). On April 5, 2021, KPM, a competitor of ITG, sued ITG, Blue Sun, and a number of individuals in the United States District Court for the District of Massachusetts (the "District Court"), asserting claims of trade secret misappropriation and tortious interference centered around the sales of the Phoenix NIR product line. The initial basis of this lawsuit framed the accusations in a manner to imply that the technology for the ITG's product was stolen from KPM through the hiring of new employees.

10. Suit was filed in Massachusetts notwithstanding the fact that neither ITG, Blue Sun, nor any of the other defendants were located in the Commonwealth of Massachusetts, and notwithstanding that there were no agreements between the parties or any of their predecessors that would have permitted jurisdiction to be proper in Massachusetts.

11. On February 7, 2025, the District Court issued multimillion dollar final judgments in the litigation against ITG and Blue Sun.

12. On February 26, 2025, ITG and Blue Sun engaged the service of Smith Duggan Cornell & Gollub LLP ("Smith Duggan") to handle the appeal from the Judgments that had been entered against them in the District Court.

13. On March 4, 2025, Smith Duggan, on behalf of ITG and Blue Sun, noted an appeal from the Judgment entered by the District Court. The appeal was pending in the United States Court of Appeals for the First Circuit on the Petition Date and, subject to the provisions of the automatic stay of 11 U.S.C. § 362(a), remains pending at this time.

14. Based upon its research of the law and the facts, Smith Duggan is beyond optimistic that the Judgments against ITG and Blue Sun will be reversed due to the District Court's clear lack of jurisdiction over the defendants in the KPM Litigation. Smith Duggan also believes that there are significant errors relating to the substantive issues and damage calculation in connection with the Judgments entere4d in the KPM Litigation.

15. With the appeal pending, on July 30, 2025, KPM enrolled the Judgments against ITG and Blue Sun in the United States District Court for the District of Maryland and, without waiting the required 30 days to pursue collection action, sought and obtained Writs of Garnishment on the Debtors' bank accounts.

16. It was that action that necessitated the two bankruptcy filings.

17. In filing the bankruptcy cases, ITG and Blue Sun sought to obtain the benefit of the stay to continue their operations without threat of further garnishment or other collection actions while the appeal was running its course.

18. If ITG and Blue Sun are successful in their appeal, and if they no longer have any obligation to KPM as a result, that decision will have a substantial impact on the Debtors' jointly administered cases both in terms of the amount of debt that has to be funded through their Plans and the amount of influence, if any, that KPM will have over the confirmation process.[1]

---

[1] If the First Circuit agrees that the District Court lacked jurisdiction to proceed with the KPM Litigation, KPM's Complaint will have to be dismissed. In that event, KPM's claims , to the extent that it maintains viable claims against either ITG or Blue Sun, will be

**DEBTORS' EXHIBIT 9**

The Bankruptcy Proceedings

19.     Given the need to have the stay lifted to pursue the appeal, and anxious to move that process forward, in the first week of the bankruptcy cases, the Debtors contacted KPM and inquired whether KPM would consent to relief from the automatic stay to permit the appeal to proceed in the First Circuit.

20.      When KPM did not provide its consent, ITG filed a motion seeking relief from the automatic stay on September 10, 2025, and filed an Application to employ Smith Duggan as special counsel to pursue that appeal.

21.     That same day, Blue Sun filed its own motion seeking relief from the automatic stay and subsequently filed its own Application to employ Smith Duggan as special counsel to pursue that appeal.

22.     Concerned that KPM's lack of consent to relief from the stay meant it was possible that KPM would object to the Debtors' proposed employment of Smith Duggan, the Debtors withdrew their lift stay motions to avoid the possibility that the stay would be lifted and that the Debtors would not have counsel to prosecute the appeal.

23.     The withdrawal of the lift stay motions proved to be wise moves as, in fact, KPM did object to the Debtors' Applications to employ Smith Duggan.

24.     Following a hearing on the Applications to employ Smith Duggan and KPM's objections thereto, the Court found that the pursuit of the appeal was a necessary part of the reorganization process, that the employment of Smith Duggan was both permissible under the

---

barred by limitations.  In that event, KPM will have no voice in the confirmation process.  If, on the other hand, the First Circuit determines that the District Court properly exercised jurisdiction, but erred in awarding damages against ITG and/or erred in calculating the amount of damages awarded, that determination could have a substantial effect upon the confirmation process in one or both of the Debtors' cases.

Bankruptcy Code and in the best interest of the Debtors' jointly administered estates. In approving Smith Duggan's employment, the Court specifically noted that KPM's objection was without merit. .

25. By Orders entered October 31, 2025 in the Blue Sun Case and November 3, 2025, in the ITG Case (the "Employment Orders"), the Court approved the employment of Smith Duggan as special counsel to prosecute the appeal in the First Circuit.

26. Immediately following the hearing on the Applications to employ Smioth Duggan, and before the entry of the Employment Orders, the Debtors again inquired whether KPM would consent to relief from the stay to allow the Debtors to pursue the appeal.

27. As of November 21, 2025, KPM still had not provided its consent.

28. For that reason, on November 21, 2025, the Debtors filed a joint motion seeking relief from the automatic stay to permit the appeal to proceed in the First Circuit.

29. As of the filing of this Motion, the automatic stay has not yet been lifted and, as a result, the appellate proceedings are still on pause.

30. It is not clear when the stay will be lifted or what briefing schedule will be set once the stay is lifted; however, it is clear that it will take several months for briefing to be completed, oral argument to be held, and a decision to be made in in connection with the issues on appeal in the First Circuit.

<u>The Extension Request</u>

31. Pursuant to Section 1121(b) of the Bankruptcy Code, the Debtors' exclusive period to file a plan of reorganization will expire on December 27, 2025 (the "Exclusive Filing Period") and the Debtors' exclusive right to solicit and obtain acceptances to the plan will expire

**DEBTORS' EXHIBIT 9**

on February 25, 2026 (the "Acceptance Period")(together with the Exclusive Filing Period, the "Exclusive Periods").

32. By this Motion, the Debtors seek the entry of an Order extending the Exclusive Filing Period to September 30, 2026, and the Acceptance Period to November 30, 2026.

33. Section 1121(d) of the Bankruptcy Code authorizes the Court, for cause shown, to extend a debtor's exclusive periods to file a plan and solicit acceptances thereto.

34. Although "cause" is not defined by the Bankruptcy Code, it is well settled that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the bankruptcy court, based upon the facts and circumstances of each case. See In re AMKO Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). The Fourth Circuit has not directly addressed the issue of what constitutes cause for purposes of Section 1121(d); however, courts in this jurisdiction have looked to the factors cited in In re Express One International, Inc., 194 BR 98 (Bankr. E.D. Tx. 1996) in considering adjustments to the exclusivity periods. See In re Lichtin/Wade, L.L.C., 478 B.R. 204 (Bankr. E.D. N.C. 2012).

35. To determine whether cause exists for an extension of exclusivity, courts have relied on a variety of factors, including (a) the size and complexity of the case, (b) the necessity of sufficient time to negotiate and prepare adequate information, (c) the existence of good faith process toward reorganization, (d) whether the debtor is paying debts as they become due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with creditors, (g) the length of time the case has been pending, (h) whether the debtor is seeking the extension to pressure creditors, and (i) whether unresolved contingencies exist. See also In re Dow Corning Corp., 208 B.R. 661 (Bankr. E.D, Mich. 1997).

36.     Not all factors are relevant to every case, and the existence of even one of the above listed factors may be sufficient to extend a debtor's exclusivity periods.  See, e.g., Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("As always, we emphasize that these are only factors, not all of which are relevant in every case . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each"). Courts routinely grant a debtor's first request for an extension of the debtor's exclusivity periods.  See In re Mirant Corp., 2004 WL 2250986, at *2 (N.D. Texas 2004) ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts"); see also In re Apex Pharm., Inc., 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied"). Here, the relevant factors strongly favor an extension of the Debtors' Exclusive Periods.

37.     Although this is not a particularly large case, the pendency of the multi-million dollar claims of the Debtors' competitor, KPM, a creditor that is not even a trade creditor, makes this case complex at this stage of the proceedings.

38.     On the surface, the Debtors' Plans will not be particularly complex as they will dedicate their disposable income to pay the claims of creditors over a period of time.  What is complex is the classification of claims and whether, for example, KPM, as a non-trade creditor, would be separately classified from the Debtors' trade creditors.  The Debtors anticipate that such treatment, while certainly permissible under existing law, would generate expensive and time-consuming litigation over that provision of the Debtors' Plans.

39. Similarly, balloting and the determination of acceptance or rejection of Plans will be significantly impacted by whether KPM is entitled to participate in balloting and, if so, the amount of its claim.

40. By declining to consent to having the stay lifted and by objecting to the Applications to employ Smith Duggan, KPM has already caused a waste of time and money in these cases and has demonstrated the lengths to which it may be willing to go to attempt to disrupt and frustrate the Debtors' reorganization efforts in order to put its competitors out of business.

41. The Debtors believe it is prudent, and in the best interest of the Debtors' respective estates, to preserve their exclusive right to file Plans while the First Circuit resolves the KPM claim in the only jurisdiction in which that claim can be resolved.

42. The Debtors acknowledge that a nine (9) month extension as an initial request is on the longer side of such requests; however, under the facts and circumstances presented in these cases, the Debtors believe that such an extension is appropriate. The length of time that is required is a factor of how long it will take to obtain a decision in the First Circuit. In large part, that time frame is based upon the briefing schedule that will be established in the First Circuit. As noted above, that schedule cannot be set until after the stay is lifted. Once the stay is lifted, the Debtor anticipates that it will likely take four months for briefing to be complete. Even assuming the Debtor files its Brief within a week or two after the stay is lifted, KPM would have the right to seek an extension of time for its opening Brief, and the Debtors would then have an opportunity to file a Reply Brief. At that point, the Debtor anticipates it would be several months before oral argument is scheduled and then several more months before a decision is rendered.

43. In considering the length of the requested extensions, the Debtors note that KPM is directly responsible for several months of delay in getting to this point. As noted above, motions seeking relief from the automatic stay were filed on September 10, 2025. Had KPM consented to relief from the stay and agreed not to object to the Applications to employ Smith Duggan, the parties would have already been well into the briefing period in the First Circuit. Instead, the ill-fated actions of KPM have delayed the appellate proceedings by more than two months..

44. Of course, should the appellate proceedings move faster than anticipated and should the First Circuit provide it ruling earlier than anticipated, the Debtors would be permitted to, and anticipate that they would, file Plans before the extended Exclusive Filing Period.

45. In noting that an initial request for a nine (9) month extension may not be the norm, the Debtors also note that nine (9) months is not an extreme amount of time as 11 U.S.C. § 1121(d)(2) allows extension of up to eighteen (18) months after the Order for relief for the Exclusive Filing Period and up to twenty (20) months for the Acceptance Period.

46. The Debtors do not seek these extensions for the purpose of unduly delaying these proceedings or for any other improper purpose. Rather, the Debtors seek these extension for the reasons stated in detail above and assert that good cause exists to extend the Debtors' Exclusive Periods to file proposed Plans and solicit acceptances thereto.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court enter an Order:

A. Granting this Motion;

B. Extending the Exclusive Filing Period to and including September 30, 2026;

C. Extending the Acceptance Period to and including November 30, 2026; and

**DEBTORS' EXHIBIT 9**

D.  Granting such other and further relief as the Court deems necessary or appropriate. Under the circumstances presented.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig,(#18071)
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com

Counsel for Blue Sun Scientific, LLC


\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Wolff & Orenstein, LLC
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com

Counsel for The Innovative Technologies
 Group & Co, LTD


CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2025, a copy of the foregoing was served by electronic mail to:

Hugh M. Bernstein, Esq.
Office of the United States Trustee
101 W. Lombard Street
Suite 2625
Baltimore, Maryland 21202
hugh.m.bernstein@usdoj.gov

DEBTORS' EXHIBIT 9

Carol J. Hulme, Esq.
General Attorney
Baltimore/Richmond Offices
Office of General Counsel
U.S. Small Business Administration
Carol-Ann.Hulme@sba.gov

Michael D. Nord, Esq.
Gebhardt and Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
mnord@gebsmith.com

Timothy VanCisin, Esq.
Gebhardt and Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
tvancisin@gebsmith.com

Michael Benjamin Brown
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
mbbrown@milesstockbridge.com

Addison Chappell, Esq.
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
achappell@milesstockbridge.com

      I hereby further certify that on the 1st day of Decemberr, 2025, a copy of the foregoing was served by first class mail to all parties on the mailing matrix filed in this case.

                                      /s/ Jeffrey M. Orenstein
                                      Jeffrey M. Orenstein

# DEBTORS' EXHIBIT 9