IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: <br><br> BLUE SUN SCIENTIFIC, LLC, <br><br> THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD, <br><br>    Debtors. | Jointly Administered Under <br><br> Case No. 25-17998-DER (Lead Case) <br><br> Case No. 25-18000-DER <br><br> Chapter 11 |

**OBJECTION TO DEBTORS' MOTION FOR ORDER EXTENDING EXCLUSIVE PERIODS TO FILE PLANS OF REORGANIZATION AND OBTAIN ACCEPTANCES THERETO**

KPM Analytics North America Corporation ("KPM"), by and through undersigned counsel, files its Objection to Debtors' Motion for Order Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto ("Objection") and, in support, states:

**Introduction**

1. The Debtors seek a nine (9) month extension of their exclusive period to file a plan. As the Debtors themselves concede, the length of this requested extension is exceptional. More fundamentally, their proffered reason for the extension – to allow time for the resolution of their appeal of the judgment that precipitated their petitions – reveals that these cases are little more than a gambit to enjoy a bondless appeal of that judgment in circumvention of the Federal Rules of Civil and Appellate Procedure and bankruptcy caselaw rejecting such strategies.

2. Accordingly, this Court should reject the Debtors' tactics and deny their Motion in its entirety.

1

**Background**

3. These bankruptcy cases follow KPM's successful prosecution of claims against Blue Sun Scientific, LLC ("Blue Sun") and The Innovative Technologies Group & Co., LTD ("ITG") (and, together with Blue Sun, the "Debtors") for misappropriation of trade secrets, tortious interference, and statutory violations for unfair trade practices in the United States District Court for the District of Massachusetts ("USDC Massachusetts") in the case styled as *KPM Analytics North America Corp. v. Blue Sun Scientific, LLC, et al.*, Case Number 4:21-cv-10572-MRG (D. Mass.) (the "Massachusetts Case").

4. In February 2025, following a 9-day jury trial, the USDC Massachusetts entered a permanent injunction and monetary judgments against ITG and Blue Sun, jointly and severally, in the principal amount of $3 million, plus an additional judgment against ITG in the amount of $3.6 million, plus $1.5 million in attorneys' fees, over $271,000 in costs, as well as pre- and post-judgment interest (collectively the "Judgment").

5. On **March 4, 2025**, the Debtors noted an appeal to the United States Court of Appeals for the First Circuit, commencing case number 25-1222 (the "Appeal").

6. Neither of the Debtors sought a stay of enforcement pending appeal, despite the familiar procedure available under the Federal Rules of Civil Procedure – namely, by obtaining a court order or posting a supersedeas bond. *See* Fed. R. Civ. P. 62(b).

7. The Debtors did, however, take action to oppose KPM's plans to enforce the judgment, opposing KPM's request for a writ of execution in the USDC Massachusetts and opposing the domestication of the Judgment in Maryland.

8. Pertinent here, in their **March 26, 2025** brief opposing KPM's enforcement efforts, the Debtors expressly represented to the USDC Massachusetts that they "have engaged

2

bankruptcy counsel to file petitions for Chapter 11 Bankruptcy *within the next few weeks*." *See* Massachusetts Case, Limited Opposition of Defendants to Plaintiff's Motion for Leave to Register Judgment in the District of Maryland, Dkt. No. 333, attached as **Exhibit A**. (emphasis added).

9. In fact, the Debtors waited *another five months*—until August 29, 2025—to file their bankruptcy petitions, which came only after KPM took action to enforce the Judgment in this District.¹

10. On December 1, 2025, the Debtors filed a Motion for an Order Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto [Dkt. No. 34] (the "Exclusivity Motion"), requesting an extraordinary nine (9) month extension of the exclusive period to file a plan through September 30, 2026, and an extension of the exclusive acceptance period through November 30, 2026.

## Legal Standard

11. Section 1121(b) provides Chapter 11 debtors with the exclusive right to file a Chapter 11 plan for the first 120 days of a case. 11 U.S.C. § 1121. Extensions of the Debtors' exclusivity period are governed by Section 1121(d), under which the Debtors must establish cause for the extension. *Id.*

12. Cause is not defined by the Bankruptcy Code, and the Code does not set forth the factors that must be considered by the court in determining whether cause has been established to

---

¹ The Debtors argue that KPM was required under Rule 62 to wait 30 days after domesticating the Judgment in Maryland before pursing collection action. But the automatic stay in Federal Rule 62 relates to the date of the original judgment, not the date the judgment was registered in Maryland. The logic of the 30 days running from the date of the original judgment is to give the defendant/debtor time to decide whether to file a post-judgment motion, to notice an appeal, or to seek a stay of enforcement before enforcement gets underway. There is no reason why the stay should apply in each district where the judgment is domesticated, even potentially years later, and there is nothing in the rule that justifies the Debtors' position.

extend the exclusivity period. Courts have relied upon the following factors in deciding whether to grant an extension of exclusivity:

a. the size and complexity of the case;

b. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

c. the existence of good faith progress toward reorganization;

d. the fact that the debtor is paying its bills as they become due;

e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f. whether the debtor has made progress in negotiations with its creditors;

g. the amount of time which has elapsed in the case;

h. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

i. whether an unresolved contingency exists.

*In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Express One International, Inc.*, 194 B.R. 98, 100 (Bankr. E.D.Tx. 1996).

13. The "decision to extend a debtor's exclusive periods is a serious matter; extensions are not granted routinely or cavalierly." *In re Borders Group, Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011).

14. Section 1121(d) "was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostage of Chapter 11 debtors." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., (In re Timbers of Inwood Forest Associates, Ltd.)*, 808 F.2d 363, 372 (5th Cir. 1987).

**Legal Argument**

15. To establish cause, the Debtors argue that their nine (9) month extension request is appropriate because of (1) the size and complexity of the bankruptcy case, and (2) the time

4

needed to complete the Appeal. An examination of these factors demonstrates that the Debtors cannot establish the requisite cause.

### i       The size and complexity of the case.

16.     The requested nine (9) month extension of the exclusivity period will result in the Debtors obtaining the sole right to file a plan for one year. The relief sought is extraordinary, as the Debtors concede: "[t]he Debtors acknowledge that a nine (9) month extension as an initial request is on the longer side of such requests…" Exclusivity Motion at ¶ 42. The Debtors easily could file a Chapter 11 plan that addresses alternative treatments of claims depending on the outcome of the Appeal (*i.e.*, a distribution under circumstances where KPM's Judgment is affirmed, and vice versa). The Appeal need not be completed before a plan can be proposed, and any suggestion to the contrary begs the question whether the Debtors ever intended to file a plan during the 120-day exclusivity period under the Code.

17.     The Debtors are not large companies, and their narrow unsecured creditor pool is dominated by KPM's Judgment.

18.     In prior pleadings, the Debtors explained that their ordinary course operations are profitable, that all payments to ITG's secured creditor were current through July 2025, that the Debtors were generally paying their debts as they came due, and that, but for KPM's judgment, the Debtors would have been able to operate without the intervention of this Court.[2]

19.     Although they have not filed the required monthly operating reports as of the date of this Opposition, it can be presumed the Debtors are generating revenue and have the ability to fund a plan.

---

[2] *See* Consent Motion for Entry of Order Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection to Sandy Spring Bank, a Division of Atlantic Union Bank, Pursuant to 11 U.S.C. § 363 [Case No. 25-18000, Dkt. No. 15]; Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel to Debtor [Dkt. No. 17] at ¶ 16.

20. The Debtors also state that a to-be-filed Chapter 11 plan will not be particularly complex on the surface and will dedicate their disposable income to pay creditors' claims over a period of time.

21. As such, these cases are not complex enough to require the Appeal to be completed prior to beginning the confirmation process.

22. The excuse of waiting for the Appeal to run its course should not permit the Debtors to continue to hold all of their creditors hostage while the Appeal plays out.

23. The Debtors' businesses are operating, and they enjoy the full benefits of the automatic stay while skirting the responsibility of addressing KPM's Judgment. Bankruptcy should not be used to maintain operations while sidestepping the legitimate claims of creditors.

24. KPM is harmed by being forced to wait at least nine (9) additional months before the Debtors are incentivized to file a plan and begin the confirmation process.

  ii  **The time needed to complete the Appeal.**

25. The primary reason the Debtors seek to extend the exclusivity period is to take advantage of their exclusive right to file a plan while the Appeal runs its course. But litigation, without more, is not sufficient cause to justify extending the exclusivity period. *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 488 (Bankr. D. Conn. 2007) (explaining that the existence of unresolved matters in litigation involving the debtor and its largest creditors is not ordinarily sufficient to establish cause to grant an extension of the exclusivity period); *In re Lake in the Woods*, 10 B.R. 338, 342 (E.D. Mich. 1981) (holding that pending litigation over title to the land on which the debtor's apartment complex was situated was not sufficient cause to extend the exclusivity period); *In re Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 452 (Bankr. W.D. Tex. 1987) ("The ordinary Chapter 11 debtor is expected to bring with it litigation, or the potential for it. … Litigation with creditors is not an unusual circumstance, and the fact that

litigation is pending with creditors is not in itself sufficient cause to justify an extension of the exclusivity period. Only under extreme circumstances would the existence of litigation constitute cause for an extension.")(internal citations omitted).

26.     Here, the merits of the Debtors' Appeal are not nearly as strong as the Debtors proclaim.  KPM properly filed suit against the Debtors in the USDC Massachusetts based on the Massachusetts Long Arm Statute, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person ... causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(c).  At the motion to dismiss stage, the USDC Massachusetts concluded in a reasoned opinion that KPM had established personal jurisdiction over both Debtors in Massachusetts by, among other things, the Debtors' causing tortious injury to KPM in Massachusetts.  *See* Massachusetts Case, Order and Memorandum on Defendants' Motions to Dismiss, Dkt. No. 64 at pages 14-24, attached as **Exhibit B**.  The jury likewise concluded that the Debtors caused tortious injury to the Massachusetts-located KPM.  *See* Massachusetts Case, Verdict Form, Dkt. No. 230, attached as **Exhibit C**.  Final judgment was entered accordingly.  *See* Massachusetts Case, Final Judgment and Permanent Injunction, Dkt No. 317, attached as **Exhibit D**.  It is highly unlikely that the First Circuit would overturn this conclusion.

27.     Next, the Debtors argue that KPM is directly responsible for the several months of delay preventing the Appeal from moving forward.  This assertion ignores the Debtors' own delay and representations to the USDC Massachusetts in March 2025 that they would be filing bankruptcy within weeks: "[b]oth [Debtors] have engaged bankruptcy counsel to file petitions

7

for Chapter 11 Bankruptcy within the next few weeks.  Those filings will automatically stay any efforts to collect on the judgment[.]" *See* Ex. A, page 2.

28. Despite this representation, the Debtors merely used the threat of bankruptcy as a delay tactic and means of avoiding enforcement of the judgment against them.  When the Debtors did finally choose to file bankruptcy, they did not do so out of a desire to reorganize their affairs, but, again, only to avoid KPM's enforcement efforts in August 2025.  Indeed, the Debtors have represented to this Court that they filed bankruptcy as a result of KPM's garnishment.[3]

29. The above-captioned cases themselves constitute an enormous delay of the Appeal—a delay the Debtors could have easily avoided had they obtained a stay of enforcement pending appeal or chosen not to file bankruptcy.  Yet, the Debtors never sought a stay; accordingly, none was granted or even considered.

30. But for the Debtors' spring 2025 delay tactics and their last-minute bankruptcy filing to escape enforcement, the Appeal would have been fully briefed months ago, and any oral argument likely completed by now.  Debtors' complaints of delay are thus insincere, at best.

31. Ultimately, the Debtors' actions indicate that their overarching strategy is to draw out both the Appeal and this case as long as possible so that they may continue their operations with impunity.  The Debtors have shown little interest in reorganizing swiftly and efficiently, but only in buying time to put off dealing with KPM's substantial Judgment if, and only if, the Appeal turns out badly for them.  In the meantime, they appear content to remain in Chapter 11 indefinitely, continue operating their businesses without consequence, and letting the Appeal run

---

[3] Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel to Debtor [Dkt. No. 17] at ¶ 17.

8

its course all while simultaneously blocking KPM from proposing a plan or otherwise enforcing its Judgment.

32. Extending exclusivity would only prolong the period during which the Debtors avoid confronting KPM's Judgment without any meaningful progress toward confirmation. The Debtors could readily propose a plan that provides for creditor recoveries while the Appeal simultaneously proceeds.

33. The Bankruptcy Code should not be used to manufacture delay or shield a debtor from the consequences of an adverse judgment while the debtor challenges that very judgment. Having chosen to avoid enforcement of the Judgment by filing bankruptcy, the Debtors should now be required to face the outcome of that choice. As such, the Exclusivity Motion should be denied.

## Conclusion

For the foregoing reasons, KPM respectfully requests the Court enter an order denying the Exclusivity Motion and granting KPM such other relief the Court deems proper.

Dated December 15, 2025                     Respectfully submitted,

*/s/ Addison J. Chappell*
Addison J. Chappell, Esq. (#21852)
Michael B. Brown, Esq. (#19641)
Patricia B. Jefferson, Esq. (#27668)
MILES & STOCKBRIDGE P.C.
100 Light Street, 7th Floor
Baltimore, MD 21202
Telephone: (410) 385-3481
Telephone: (410) 385-3663
achappell@milesstockbridge.com
mbbrown@milesstockbridge.com
pjefferson@milesstockbridge.com

*Counsel for KPM Analytics*
*North America Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 15, 2025, a copy of the foregoing Objection together with the proposed order was served on all parties requesting service in this case via this Court's CM/ECF electronic noticing system as follows:

- **Hugh M. (UST) Bernstein**   hugh.m.bernstein@usdoj.gov
- **Michael Benjamin Brown**   mbbrown@milesstockbridge.com, jdiaz@milesstockbridge.com
- **Addison J. Chappell**   achappell@milesstockbridge.com
- **Michael David Nord**   mnord@gebsmith.com
- **Jeffrey M. Orenstein**   jorenstein@wolawgroup.com
- **US Trustee - Baltimore**   USTPRegion04.BA.ECF@USDOJ.GOV
- **Timothy VanCisin**   tvancisin@gebsmith.com
- **Maurice Belmont VerStandig**   mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

*/s/ Addison J. Chappell*
Addison J. Chappell