UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

IN RE:                               *

BLUE SUN SCIENTIFIC, LLC             *      No.  25-17998-DER
                                            Chapter 11
        Debtor                       *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

APPLICATION FOR AUTHORITY TO EMPLOY
SMITH DUGGAN CORNELL & GOLLUB LLP AS SPECIAL COUNSEL FOR DEBTOR

BLUE SUN SCIENTIFIC, LLC, the Debtor and Debtor-in-Possession (the "Debtor"), files this application for authority to employ Smith Duggan Cornell & Gollub LLP ("Smith Duggan") as Special Counsel for the Debtor (the "Application"), and in support thereof state as follows:

Jurisdiction and Venue

1.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 327. This matter is a core proceeding, pursuant to 28 U.S.C. §157(b)(2)(A).

2.       Venue lies properly in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The Application is made pursuant to Section 327(a) of Title 11 of the United States Code (the "Bankruptcy Code").

Background

4.       On August 29, 2025 (the "Petition Date"), Blue Sun Scientific, LLC ("Blue Sun") filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.  Later that same day, the Debtor's parent company ("ITG," known, collectively with the Debtor, as the "Debtors") filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

DEBTORS' EXHIBIT 6

Pursuant to §§ 1101, 1107, and 1108, the Debtors will continue in the possession of their property and the management of their business affairs as Debtors-in-Possession.

6.      The Debtor is a limited liability company that was formed under the laws of the State of Maryland on July 6, 2018.  It is wholly owned by ITG and, for that reason, Blue Sun and ITG file consolidated tax returns.

7.      ITG, a corporation that was formed under the laws of the State of Maryland on June 5, 1997, operates as a specialized manufacturer of process and quality control optical instruments serving the food and agriculture, packaging, and oil analysis industries.  Several of the instruments it manufactures are sole-source critical, highly technical, devices and components for companies that the ITG has served for more than 25 years including any technological upgrades.  ITG has designed, invented and manufactured successful NIR products for companies over the course of its 28 years in business. Including selling the Unity Scientific Spectrastar product line to Westco Scientific in 2008 ($5,000,000 in sales per year at peak). After the selling of the Unity Spectrastar product line in 2008, ITG focused on continuing to provide the sole-source components, along with manufacturing consumables used in various analytical instruments and being a unique service provider for a variety instrumentation including support for instruments dating back to 1997.  Over the course of its existence, ITG and its employees have successfully patented at least five inventions that have been unique to the products provided to its customers.  One of those patents was assigned to, and remains property of, the Debtor.

8.      Since its formation, the Debtor has served as the exclusive sales agent for ITG's products.

2

DEBTORS' EXHIBIT 6

9.     Both of the Debtors were running successful operations until they became involved in litigation with KPM Analytics North America Corporation ("KPM").  On April 5, 2021, KPM, a competitor of ITG, sued ITG, Blue Sun, and a number of individuals in the United States District Court for the District of Massachusetts (the "District Court"), asserting claims of trade secret misappropriation and tortious interference centered around the sales of the Phoenix NIR product line.  The initial basis of this lawsuit framed the accusations in a manner to imply that the technology for the ITG's product was stolen from KPM through the hiring of new employees.

10.     The suit was filed in Massachusetts notwithstanding that neither the Debtor nor any of the other defendants were located in the State of Massachusetts, and notwithstanding that there were no agreements between the parties or any of their predecessors that would have permitted jurisdiction to be proper in Massachusetts.  Respectfully, the District Court misapplied the law on jurisdiction and allowed the case to proceed in Massachusetts.

11.     The Debtor and the other defendants endured several years of rigorous legal battles requiring the Debtor to spend large amounts of money for legal fees and, of equal importance, and occupying significant portions of the time of leadership in engineering, accounting and sales arms of the Debtor.  In addition to creating a heavy debt burden, the distractions caused by the litigation led to less productivity and a reduction in sales growth.

12.     On February 7, 2025, the District Court issued a final judgment in the litigation. In addition to the money judgment, the District Court also provided injunctive relief which sets out 46 companies in the United States to whom the Debtors could not sell the NIR product line to for a period of 10 years.

DEBTORS' EXHIBIT 6

13. On February 26, 2025, the Debtors engaged the service of Smith Duggan to handle the appeal from the District Court judgment and on March 4, 2025, Smith Duggan, on behalf of the Debtors, noted an appeal from the judgment entered by the District Court. The appeal is currently pending in the United States Court of Appeals for the First Circuit and, based upon the Schedule set by the First Circuit, the Debtors' brief was due to be filed on or before September 3, 2025.

14. With the appeal pending, on July 30, 2025, KPM enrolled the judgment in the United States District Court for the District of Maryland and, without waiting the required 30 days to pursue collection action, sought and obtained writs of garnishment on the Debtors' bank accounts.

15. But for the collection action, with the completion of the litigation at the trial court level and the appellate brief being readied for filing, the Debtors' management team believed they were prepared to focus their full attention on growing the Phoenix product line, thus enabling the Debtors to reach their full potential while continuing to provide the devices, components and services that have been unaffected by litigation.

16. Prior to the collection action by KPM, the Debtors were generally paying their debts to their trade creditors as they came due and, but for what is believed to be an erroneous judgment, the Debtors would have been able to operate without the intervention of this Court.

17. Nonetheless, the Debtors knew that the judgment was going to impact their business and recognized they would likely need to file for protection under the Bankruptcy Code. The writ of garnishment sealed that decision and need.

4

DEBTORS' EXHIBIT 6

### The Need for Legal Services

18.     The single most important part of the Debtors' reorganization efforts is the pursuit of their appeal.

### The Employment of Smith Duggan as Special Counsel to the Debtor

19.     The Debtor seeks to employ Smith Duggan as special counsel to continue to represent the Debtor in the appeal of the judgment.

20.     The Debtor initially selected Smith Duggan to represent it in the appeal because of its expertise in commercial and appellate litigation.  In the course of its pre-petition services, Smith Duggan spent a significant amount of time becoming familiar with the Debtor's case and identifying issues to be addressed on appeal, and commencing the process of preparing appellants' brief.

21.     The Debtor believes that Smith Duggan is well qualified to represent the Debtor in the appeal and is more qualified than any other firm might be at this stage of the proceeding based upon its knowledge of the law and facts being addressed on appeal.

### The Services to be Rendered

22.     The professional services that Smith Duggan hall render include:

     a.     Completing and filing appellant's brief;

     b.     Reviewing appellee's brief when filed;

     c.     Researching any new issues raised in appellee's brief;

     d.     Preparing and filing a reply brief; and

     e.     Attending oral argument

## Compensation

23.     The Debtor desires to employ Smith Duggan under a general retainer because of the extensive legal services required.

24.     On or about March 20, 2025, Smith Duggan received an initial retainer of $20,000.00 from Blue Sun.  Per the terms of its engagement letter, the total retainer was to be $60,000.00 paid $20,000.00 per month.  Smith Duggan received those funds from Blue Sun and applied them to its invoices.  As of the petition date, Smith Duggan had invoiced the Debtor and Blue Sun for services provided and had received a total of $118,896.70 from Blue Sun.  This amount includes the $60,000.00 retainer payments that had been applied against the invoices and exhausted.  As of the petition date, Smith Duggan was owed $33,818.30 for services provided and invoiced to the Debtors.  Additionally, there was approximately $65,000.00 in fees for Smith Duggan's services during the month of August that had not been billed as of the petition date.

25.     The bulk of the fees billed by Smith Duggan related to activities to permit Smith Duggan to get up to speed on the legal and factual issues in the underlying litigation and to assess the potential for a successful appeal.  Based upon their research, Smith Duggan is beyond optimistic that the judgment will be reversed due to the District Court's clear lack of jurisdiction.  Smith Duggan also believes that there are significant errors relating to the substantive issues in the case which can be addressed in the appellate proceedings.

26.     At the time of the filing of the Debtor's petition, Smith Duggan was actively working on the appellate brief which led to a significant portion of the current balance due and the unbilled work in process.

27.     Smith Duggan ceased its work on the appeal upon being advised of the bankruptcy filing and has not done any additional work since that time.

6

DEBTORS' EXHIBIT 6

28.     Following this Honorable Court's review and approval of its employment, Smith Duggan will commence providing additional services and will continue to charge the Debtor on an hourly basis for time expended and on an actual dollar amount for expenses incurred plus reimbursement for ordinary out-of-pocket expenses. The hourly rates charged will reflect Smith Duggan's regular hourly billing rates for all partners, associates, paralegals and legal clerks.

<u>No Adverse Interest</u>

29.     While Smith Duggan is a creditor of the Debtor, Smith Duggan does not represent or hold any interest adverse to the Debtor as a debtor-in-possession or to the Debtor's estate with regard to the appellate proceedings and is, therefore, qualified to represent the Debtor as special counsel pursuant to the provisions of 11 U.S.C. § 327(e).

30.     Smith Duggan has no connection to the Debtor except as disclosed above in connection with the pending appeal.

31.     Except as disclosed above, Smith Duggan has no connection with the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

<u>Disinterested Person</u>

32.     Although Smith Duggan is not a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code and as would be required to serve as general counsel to the Debtor under 11 U.S.C. § 327(a), as addressed above, Smith Duggan does not represents or hold any interest adverse to the Debtor as a debtor-in-possession or to the Debtor's estate in with respect to the matter on which it is to be employed (the appeal) and is, therefore, qualified to represent the Debtor as special counsel pursuant to the provisions of 11 U.S.C. § 327(e).

# DEBTORS' EXHIBIT 6

<u>Best Interests of the Estate</u>

33.     As set forth above, Smith Duggan satisfies all the requirements for employment as special counsel for the Debtor under 11 U.S.C. § 327(e).

34.     The employment of Smith Duggans special counsel for the Debtor is in the best interest of the Debtor, its estate, and its creditors as, among other things, Smith Duggan is already intimately familiar with the details of the issues to be addressed on appeal and is well in process of preparing the Brief.  The costs of retaining new counsel to pick up at this point would be prohibitive, especially at this late date in the appellate proceedings.

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing the Debtor to employ Smith Duggan as its special counsel under Section 327(e) of the Bankruptcy Code and granting such other and further relief as is just and equitable.


Respectfully submitted,


/s/ Maurice B. VerStandig
Maurice B. VerStandig,(#18071)
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
Proposed Counsel for Blue Sun Scientific, LLC


*[Certificate of Service on Following Page]*

8

DEBTORS' EXHIBIT 6

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on the 29th day of September, 2025, (i) a copy of the foregoing Application for Authority to Employ Smith Duggan Cornell & Gollub LLP as Special Counsel for the Debtor, together with (ii) the Verified Statement of Attorneys to be Employed by Debtor, and (iii) a proposed Order, were served by electronic mail to:

- Hugh M. (UST) Bernstein    hugh.m.bernstein@usdoj.gov
- Michael Benjamin Brown    mbbrown@milesstockbridge.com, jdiaz@milesstockbridge.com
- Addison J. Chappell    achappell@milesstockbridge.com
- Michael David Nord    mnord@gebsmith.com
- Jeffrey M. Orenstein    jorenstein@wolawgroup.com
- US Trustee - Baltimore    USTPRegion04.BA.ECF@USDOJ.GOV
- Timothy VanCisin    tvancisin@gebsmith.com
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig

DEBTORS' EXHIBIT 6