UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE: | * | |
| BLUE SUN SCIENTIFIC, LLC | * | No.  25-17998-DER |
| | | Chapter 11 |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION TO MOTION TO CONVERT OR DISMISS

Comes now Blue Sun Scientific, LLC ("Blue Sun" or the "Debtor"), in opposition to the motion to convert or dismiss, DE #62 (the "Motion"), filed by the United States Trustee (the "UST"), and states as follows:

### I. Introduction

The Debtor in this case has been slow to file monthly operating reports, with such being largely correlative to issues obtaining bank statements from Atlantic Union Bank during a timespan when—post-merger with Sandy Spring Bank—the financial institution had pronounced difficulties producing such depositor statements. Blue Sun understands this was a shortcoming on the Debtor's part and one that ought not be repeated during the pendency of this case. Blue Sun equally, however, respectfully suggests the shortcoming—to the extent such constitutes "cause" for conversion or dismissal—ought to be "excused," 11 U.S.C. § 1112(b)(4)(F), or, at minimum, the eccentricities correlative to the unavailability of bank statements give rise to "unusual circumstances," 11 U.S.C. § 1112(b)(2), with conversion or dismissal not being in the best interests of creditors and the estate, *id.*, and with there being a reasonable probability of plan confirmation in the time allowed by this Honorable Court, *id.* As of the filing of this opposition brief, the majority of operating reports ("MORs") have been docketed and, notably, filed with a level of detail and precision that is extraordinary in the context of most smaller chapter 11

1

debtors. Remaining MORs will be filed long before any hearing on the Motion. Similarly, any quarterly fees due and owing either have been—or promptly will be—paid.

In seeking to dismiss or convert this case, the UST also urges cause to be extant because (i) the Debtor does not carry appropriate insurance; (ii) the Debtor has failed to open a debtor-in-possession bank account (a "DIP Account"); and (iii) the Debtor has failed to furnish tax returns. On these three fronts, it is urged the UST is errant. Blue Sun has carried appropriate insurance at all times relevant, is not required to open a DIP Account but has nonetheless done so, and has furnished tax returns to the UST.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II. Standard

The Bankruptcy Code provides that matters under chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*, "(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; . . . (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . . (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee. . ." 11 U.S.C. § 1112(b)(4).

"The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr.S.D.N.Y.2009)).

Once a party in interest has filed a motion seeking conversion or dismissal, and has then proceeded to establish cause (whether an enumerated or unenumerated ground), the burden shifts to the debtor:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Additionally, in lieu of converting or dismissing a case, a court has the option of appointing a trustee if such "is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

### III. Argument

#### a. Operating Reports Were Delayed are Being Caught Up

The Debtor acknowledges having failed to file MORs prior to the Motion being docketed, as has been openly noted at a prior hearing in this case. DE #56. As observed at that hearing, and intimated above, much of the delay has been correlative to the bank holding Blue Sun's DIP Account being tardy issuing monthly statements following a merger with Sandy Spring Bank. This is a relatively *sui generis* occurrence and, while the Debtor acknowledges that MORs need to be regularly filed—and commits, unequivocally, to doing so for the duration of this case—the Debtor also respectfully posits this is an unusual circumstance that merits being excused.

Section 1112(b)(4)(F) does not create a hardline rule where tardy filings *ipso facto* give rise to conversion or dismissal; the statutory provision, rather, relies on notions of equity,

3

insisting "cause" to only be extant where the tardiness is not subsequently "excused." As noted by this Honorable Court: "The non-filing of required reports must be 'unexcused,' therefore indicating that the court has discretion to determine whether the debtor's failure rises to the level of cause." *In Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716 (Bankr. D. Md. 2011).

Equally, while the Debtor in this case believes MORs should be filed on a monthly basis, by the 21st day thereof (or on the next succeeding business day), it does bear notation that the deadline is not actually fixed by law and a breach thereof accordingly cannot constitute "cause" absent subjective, contextual showings. The Motion relies on Sections 704, 1106 and 1107 of the Bankruptcy Code, alongside Federal Rule of Bankruptcy Procedure 2015. *See* Motion, DE #62, at ¶ 14. Section 1106 requires a trustee to file the reports called for in Section 704, which only demands ". . . *periodic* reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires," 11 U.S.C. § 704(a)(8) (emphasis added), not going so far as to expressly state such reports are to be monthly or the time by which each such report is to be filed. Section 1107 merely serves to make Section 1106 binding on debtors-in-possession (as opposed to chapter 11 trustees). *See* 11 U.S.C. § 1107. And Federal Rule of Bankruptcy Procedure 2015, which *does* impose a monthly deadline and command reports be filed by the 21st day of each month, is only topically applicable (as to the date and nature of filings) to "a Chapter 11 small business case." Fed. R. Bankr. P. 2015(a)(6).

This is not a small business case. *See* Voluntary Petition, DE #1, at p. 2. And in the unique factual construct of this case, where (i) the Debtor's income has been openly discussed and analyzed in open court, just a few weeks ago; and (ii) the unavailability of bank statements made filing MORs prohibitively difficult, it is respectfully urged the filings should be accepted

4

as excusable. The Debtor has largely come current on reporting for previous months before filing this opposition brief, *see* DE #66, DE #67, DE #68, and is in the process of preparing the last two months' reports, which will be filed imminently.

### b. The Debtor Has Opened a DIP Account and, in Any Event, is not Actually Required to Have Done So

The UST also posits dismissal or conversion to be appropriate for failure to open a DIP Account. Importantly, the Debtor *has* opened a DIP Account. *See* DIP Account Statements, DE #67-6, DE #68-5. In fact, the opening of the DIP Account is what gave rise to the delays docketing MORs, as discussed above. However, while largely academic with such an account having been opened in this case, it does bear brief notation that Blue Sun was not required to have done so and, as such, any failure would not give rise to cause for dismissal or conversion.

Specifically, the Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The UST Guidelines, however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre petition bank accounts and open new 'debtor in possession' bank accounts.  All receipts must flow through the debtor in possession account(s).  All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under Section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States. . ." 11 U.S.C. § 345(b). And where the Federal Deposit Insurance Corporation (the "FDIC") insures a bank, the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation . . . which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

Clearly, the UST Guidelines and the Bankruptcy Code are in conflict. The former mandates a DIP Account be opened; the latter requires only insurance by the United States or a department or agency thereof. Yet the UST Guidelines do not actually carry the weight of law, nor may they serve to usurp or otherwise unilaterally extrapolate upon the rigors of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *See, e.g.*, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) ("In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading

all the same—'the reading the court would have reached' if no agency were involved. It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.") (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 n.11 (1984)).

The current extent of FDIC insurance on each deposit is $250,000.00. 12 U.S.C. § 1821(a)(1)(E). The Debtor's funds are—and at all times relevant have been—held at a bank insured by the FDIC. And the Debtor has not, post-petition, held funds that exceed the threshold of $250,000.00. The Debtor, rather, entered chapter 11 with $5,807.42 in cash on hand, *see* Schedule A/B, DE #1, at p. 10, and—despite healthy post-petition revenues—has not held more than $250,000.00 at any one time since the filing of this case.

To be sure, it is wise for the Debtor to have a DIP Account in a case such as this where funds may well exceed $250,000.00 in the future, and that is why one was opened shortly after the filing of this case. Yet it also bears notation that on this issue, the UST's position appears to nonetheless in conflict with governing law.

### c. Insurance has Always Been Present and Proof Thereof is Being Furnished

The Motion also alleges "cause" to be extant for a failure to maintain insurance. *See* Motion, DE #62, at pp. 6-7. As the record will make clear at a hearing on the Motion, the Debtor has carried proper insurance at all times relevant. And, based on a plain reading of the statute, there is thusly not "cause" for conversion or dismissal under Section 1112(b)(4)(C).

### d. Tax Returns Were Furnished to the UST

The Motion is also reliant on an alleged failure of Blue Sun to provide tax returns to the UST. *See* Motion, DE #62, at p. 7. In this regard, it is respectfully urged the UST is in error.

On November 10, 2025—nearly four months before the Motion was filed—counsel for the Debtor relayed to the UST, via e-mail, copies of the last three years of filed tax returns for Innovative Technologies Group & Co. ("ITG"). Upon information and belief, these returns were also shared by counsel for ITG, whose case is being jointly administered with that of Blue Sun. DE #18.

Blue Sun is a pass-through entity, being wholly owned by ITG. The tax obligations of Blue Sun are addressed through the tax filings of ITG. Blue Sun does not—and, it appears, is not required to—file independent tax returns.

### e.  If "Cause" Exists, Such is Excusable Under Section 1112

Finally, the Debtor observes that—as noted *passim*—a series of "unusual circumstances," most acutely punctuated by the unavailability of bank statements, has informed the grounds upon which the Motion is premised. Should a hearing on the Motion be conducted, Blue Sun will therein demonstrate that (i) the Debtor is in the process of preparing a plan of reorganization, within the timelines established by this Honorable Court, DE #57; (ii) the delay in filing operating reports is reasonably justified by the facts of this case; (iii) operating reports will be current by the time such hearing is commenced (already being mostly docketed); and (iv) it is not in the best interests of creditors—aside from one very active judgment creditor—for this case to be converted or dismissed. The Debtor operates a healthy business with positive post-petition income (even net of legal fees tendered to appellate counsel to be held in trust pending approval thereof), is yearning to reorganize, and looks to use the tools of chapter 11 for the benefit of *all* creditors. This is a case that belongs in chapter 11 and through which palpable good can be accomplished in chapter 11.

## IV. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the Motion; or, in the alternative, (ii) appoint a chapter 11 trustee; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig,(#18071)
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
Counsel for Blue Sun Scientific, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 18th day of February, 2026, a copy of the foregoing was served through this Honorable Court's CM/ECF system to:

- Matthew Eliot Abbott    MAbbott@wolawgroup.com, KDriscoll@wolawgroup.com
- Hugh M. (UST) Bernstein    hugh.m.bernstein@usdoj.gov
- Michael Benjamin Brown    mbbrown@milesstockbridge.com, jdiaz@milesstockbridge.com
- Addison J. Chappell    achappell@milesstockbridge.com
- Patricia B. Jefferson    pjefferson@milesstockbridge.com
- Michael David Nord    mnord@gebsmith.com
- Jeffrey M. Orenstein    jorenstein@wolawgroup.com
- Elizabeth Drayden Peters    epeters@gebsmith.com
- US Trustee - Baltimore    USTPRegion04.BA.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig