UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
(Baltimore Division)

IN RE:                                              *

BLUE SUN SCIENTIFIC, LLC                            *    No.  25-17998-DER
                                                         Chapter 11

      Debtor                                  *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN RE:                                              *

THE INNOVATIVE TECHNOLOGIES                         *    No.  25-18000-DER
 GROUP & CO., LTD                                        Chapter 11

                                                    *

      Debtor                                       Jointly administered under Case No.
                                                         25-17998-DER

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MOTION FOR ORDER EXTENDING EXCLUSIVE PERIOD
TO OBTAIN ACCEPTANCE OF PLAN OF REORGANIZATION

The Innovative Technologies Group & Co, LTD ("ITG") , by JEFFREY M.

ORENSTEIN and WOLFF & ORENSTEIN, LLC, pursuant to 11 U.S.C. § 1121(d)(2)(B), files

this Motion for Order extending the exclusive periods to obtain acceptance of the Plan of

Reorganization filed on April 29, 2026, and, in support thereof, respectfully represents as

follows:

<u>Jurisdiction and Venue</u>

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief sought herein is section 1121(d) of the

Bankruptcy Code.

4.      On August 29, 2025 (the "Petition Date"), ITG filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in this Court. ITG is continuing in possession of its property and the management of its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      On August 29, 2025 (the "Petition Date"), Blue Sun Scientific, LLC ("Blue Sun") filed its own Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in this Court. Like ITG, Blue Sun is continuing in possession of its property and the management of its businesses as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      By Order entered October 10, 2025, this Court authorized the joint administration of the two cases filed by ITG and Blue Sun (sometimes collectively referred to as the Debtors").

7.      No statutorily authorized creditors' committee has been appointed by the Office of the United States Trustee in either of these jointly administered cases.

## The Debtors, Their Business Operations, and the KPM Litigation

8.      ITG  is a corporation that was formed under the laws of the State of Maryland on June 5, 1997.  Since that time, it has operated as a specialized manufacturer of process and quality control optical instruments serving the food and agriculture, packaging, and oil analysis industries.  Several of the instruments it manufactures are sole-source critical, highly technical, devices and components for companies that the ITG has served for more than 25 years including any technological upgrades.  ITG has designed, invented and manufactured successful NIR products for companies over the course of its 28 years in business. Including selling the Unity Scientific Spectrastar product line to Westco Scientific in 2008 ($5,000,000 in sales per year at peak).  After the selling of the Unity Spectrastar product line in 2008, ITG focused on continuing to provide the sole-source components, along with manufacturing consumables used in various

analytical instruments and being a unique service provider for a variety instrumentation including support for instruments dating back to 1997.  Over the course of its existence, ITG and its employees have successfully patented at least five inventions that have been unique to the products provided to its customers.  One of those patents was assigned to, and remains property of, ITG.

9.      Blue Sun is a corporation that was formed under the laws of the State of Maryland on July 6, 2018.  Since that time, it has served as the exclusive sales agent for ITG's products.  ITG owns one hundred percent (100%) of the shares of Blue Sun and, for that reason, ITG and Blue Sun file consolidated tax returns.

10.     Both ITG and Blue Sun were running successful operations until they became involved in litigation (the "KPM Litigation") with KPM Analytics North America Corporation ("KPM").  On April 5, 2021, KPM, a competitor of ITG, sued ITG, Blue Sun, and a number of individuals in the United States District Court for the District of Massachusetts (the "District Court"), asserting claims of trade secret misappropriation and tortious interference centered around the sales of the Phoenix NIR product line.  The initial basis of this lawsuit framed the accusations in a manner to imply that the technology for the ITG's product was stolen from KPM through the hiring of new employees.

11.     Suit was filed in Massachusetts notwithstanding the fact that neither ITG, Blue Sun, nor any of the other defendants were located in the Commonwealth of Massachusetts, and notwithstanding that there were no agreements between the parties or any of their predecessors that would have permitted jurisdiction to be proper in Massachusetts.

12.     On February 7, 2025, the District Court issued multimillion dollar final judgments in the litigation against ITG and Blue Sun.

13.     On February 26, 2025, ITG and Blue Sun engaged the service of Smith Duggan Cornell & Gollub LLP ("Smith Duggan") to handle the appeal from the Judgments that had been entered against them in the District Court.

14.     On March 4, 2025, Smith Duggan, on behalf of ITG and Blue Sun, noted an appeal from the Judgment entered by the District Court.  The appeal was pending in the United States Court of Appeals for the First Circuit on the Petition Date and, subject to the provisions of the automatic stay of 11 U.S.C. § 362(a), remains pending at this time.

15.     Based upon its research of the law and the facts, Smith Duggan is beyond optimistic that the Judgments against ITG and Blue Sun will be reversed due to the District Court's clear lack of jurisdiction over the defendants in the KPM Litigation.  Smith Duggan also believes that there are significant errors relating to the substantive issues and damage calculation in connection with the Judgments entere4d in the KPM Litigation.

16.     With the appeal pending, on July 30, 2025, KPM enrolled the Judgments against ITG and Blue Sun in the United States District Court for the District of Maryland and, without waiting the required 30 days to pursue collection action, sought and obtained Writs of Garnishment on the Debtors' bank accounts.

17.     It was that action that necessitated the two bankruptcy filings.

18.     In filing the bankruptcy cases, ITG and Blue Sun sought to obtain the benefit of the stay to continue their operations without threat of further garnishment or other collection actions while the appeal was running its course.

19.     If ITG and Blue Sun are successful in their appeal, and if they no longer have any obligation to KPM as a result, that decision will have a substantial impact on the Debtors' jointly

administered cases both in terms of the amount of debt that has to be funded through their Plans and the amount of influence, if any, that KPM will have over the confirmation process.[1]

The Bankruptcy Proceedings

20.    Given the need to have the stay lifted to pursue the appeal, and anxious to move that process forward, in the first week of the bankruptcy cases, the Debtors contacted KPM and inquired whether KPM would consent to relief from the automatic stay to permit the appeal to proceed in the First Circuit.

21.    When KPM did not provide its consent, ITG filed a motion seeking relief from the automatic stay on September 10, 2025, and filed an Application to employ Smith Duggan as special counsel to pursue that appeal.

22.    That same day, Blue Sun filed its own motion seeking relief from the automatic stay and subsequently filed its own Application to employ Smith Duggan as special counsel to pursue that appeal.

23.    Concerned that KPM's lack of consent to relief from the stay meant it was possible that KPM would object to the Debtors' proposed employment of Smith Duggan, the Debtors withdrew their lift stay motions to avoid the possibility that the stay would be lifted and that the Debtors would not have counsel to prosecute the appeal.

---

[1]    If the First Circuit agrees that the District Court lacked jurisdiction to proceed with the KPM Litigation, KPM's Complaint will have to be dismissed.  In that event, KPM's claims , to the extent that it maintains viable claims against either ITG or Blue Sun, will be barred by limitations.  In that event, KPM will have no voice in the confirmation process.  If, on the other hand, the First Circuit determines that the District Court properly exercised jurisdiction, but erred in awarding damages against ITG and/or erred in calculating the amount of damages awarded, that determination could have a substantial effect upon the confirmation process in one or both of the Debtors' cases.

24.     The withdrawal of the lift stay motions proved to be wise moves as, in fact, KPM did object to the Debtors' Applications to employ Smith Duggan.

25.     Following a hearing on the Applications to employ Smith Duggan and KPM's objections thereto, the Court found that the pursuit of the appeal was a necessary part of the reorganization process, that the employment of Smith Duggan was both permissible under the Bankruptcy Code and in the best interest of the Debtors' jointly administered estates.  In approving Smith Duggan's employment, the Court specifically noted that KPM's objection was without merit.

26.     By Orders entered October 31, 2025 in the Blue Sun Case and November 3, 2025, in the ITG Case (the "Employment Orders"), the Court approved the employment of Smith Duggan as special counsel to prosecute the appeal in the First Circuit.

27.     By Order entered December 29, 2025, the Court lifted the automatic stay to permit the appeal to proceed.

28.     The Debtors promptly filed their Brief in the First Circuit and the case has now been fully briefed.

29.     In the interim, and prior to the stay being lifted, on December 1, 2025, the Debtors filed their Motion for Order Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "First Extension Motion").

30.     Following a contested hearing, on January 23, 2026, the Court entered its Order Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "First Extension Order") which, in relevant part as it relates to this Motion, provided:

> ORDERED, that the Debtors' exclusive period for filing their Plans of Reorganization, as described in 11 U.S.C. § 1121(b), is extended until March 31, 2026; and it is further

ORDERED, that the period described in 11 U.S.C. § 1121(c)(3) for obtaining acceptance of any Plans filed is extended until Monday June 1, 2026; and it is further

ORDERED, that the entry of this Order is without prejudice to the Debtors' right to seek from this Court such additional and further extensions of the exclusive periods within which to file and obtain acceptance of their plans of reorganization as may be necessary or appropriate based upon the facts and circumstances that exist at that time .
. . .

31.     On March 24, 2026, as a result of unusual medical family related emergencies, the Debtors, with KPM' consent, filed their Consent Emergency Motion for Order Briefly Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "First Consent Motion").

32.     On March 24, 2025, the Court granted the First Consent Motion by entering its Consent Order Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "First Consent Order").  The First Consent Order extended the Debtors' exclusive period for filing their Plans of Reorganization, as described in 11 U.S.C. § 1121(b), until April 15, 2026, and extended the period described in 11 U.S.C. § 1121(c)(3) for obtaining acceptance of any Plans filed until Monday June 15, 2026.

33.     On April 7, 2026, with the medical family related emergencies still ongoing, the Debtors, with KPM' consent, filed their Consent Emergency Motion for Order Briefly Further Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "Second Consent Motion").

34.     On April 8, 2026, the Court granted the Second Consent Motion by entering its Consent Order Further Extending Exclusive Periods to File Plans of Reorganization and Obtain Acceptances Thereto (the "Second Consent Order").  The Second Consent Order extended the

Debtors' exclusive period for filing their Plans of Reorganization, as described in 11 U.S.C. § 1121(b), until April 30, 2026, and extended the period described in 11 U.S.C. § 1121(c)(3) for obtaining acceptance of any Plans filed until June 29, 2026.

35.     On April 29, 2026, ITG filed its Disclosure Statement and its Plan of Reorganization.[2]

36.     As reported in the Disclosure Statement, oral argument in the appeal pending in the First Circuit had been scheduled for May 7, 2026.

37.     On May 1, 2026, the Court entered its Order and Notice of Hearing on Disclosure Statement (the "Disclosure Statement Order") which as relevant to this Motion provided:

> 1.     The hearing to consider the approval of the Disclosure Statement shall be held in Courtroom 9D of the U.S. Bankruptcy Court, U.S. Courthouse, 101 West Lombard Street, Baltimore, Maryland 21201, on June 22, 2026, at 10:00 am.
>
> 2.     June 8, 2026, is fixed as the last day for filing and serving in accordance with Federal Bankruptcy Rule 3017(a) written objections to the Disclosure Statement.
>
> 3.     Within seven (7) days after the entry of this Order, this Order and the Disclosure Statement and Plan shall be distributed by the Plan Sponsor in accordance with Federal Bankruptcy Rule 3017(a); and counsel for the Plan Sponsor shall file a certificate of service.

38.     That same day, ITG promptly served the documents required by the Disclosure Statement Order.

The Appellate Proceedings

39.     On May 4, 2026, KPM"s lead counsel, Scott Magee ("Mr. Magee") was seen in the Emergency Room of Massachusetts General Hospital ("MGH").

---

[2]     For reasons not relevant to this Motion, Blue Sun elected to allow the exclusive period for filing a Plan to lapse in its case and, for that reason, this Motion only relates to ITG.

40.     Overnight between May 4-5, 2026, Mr. Magee was admitted to the oncology department at MGH.

41.     On May 5, 2026, KPM reported to the Debtors' appellate counsel and the First Circuit that Mr. Magee was then being evaluated for surgery at MGH and that his earliest possible discharge date was Friday, May 8, 2026.

42.     KPM advised the Debtors' appellate counsel and the First Circuit that Mr. Magee remained KPM's preferred counsel to present the oral argument on its behalf and requested a continuance of the scheduled oral argument.

43.     The Debtors' of course, consented to the requested continuance and the First Circuit has since rescheduled oral argument to July 30, 2026.

The Extension Request

44.     Pursuant to Section 1121(b) of the Bankruptcy Code and the various Orders entered by this Court, ITG, having filed its Plan within the extended exclusive period approved by the Court, has the exclusive right to solicit and obtain acceptances to its Plan of Reorganization through July 29, 2026 (the "Acceptance Period").

45.     By this Motion, ITG seeks the entry of an Order extending the Acceptance Period to November 30, 2026.

46.     Section 1121(d) of the Bankruptcy Code authorizes the Court, for cause shown, to extend a debtor's exclusive periods to file a plan and solicit acceptances thereto.

47.     Although "cause" is not defined by the Bankruptcy Code, it is well settled that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the bankruptcy court, based upon the facts and circumstances of each case.  See In re AMKO Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  The Fourth Circuit has not directly

addressed the issue of what constitutes cause for purposes of Section 1121(d); however,

courts in this jurisdiction have looked to the factors cited in <u>In re Express One International, Inc.</u>,

194 BR 98 (Bankr. E.D. Tx. 1996) in considering adjustments to the exclusivity periods. <u>See</u> <u>In</u>

<u>re Lichtin/Wade, L.L.C.</u>, 478 B.R. 204 (Bankr. E.D. N.C. 2012).

48.     To determine whether cause exists for an extension of exclusivity, courts have

relied on a variety of factors, including (a) the size and complexity of the case, (b) the necessity

of sufficient time to negotiate and prepare adequate information, (c) the existence of good faith

process toward reorganization, (d) whether the debtor is paying debts as they become due,

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether

the debtor has made progress in negotiating with creditors, (g) the length of time the case has

been pending, (h) whether the debtor is seeking the extension to pressure creditors, and (i)

whether unresolved contingencies exist. <u>See also</u> <u>In re Dow Corning Corp.</u>, 208 B.R. 661

(Bankr. E.D, Mich. 1997).

49.     Not all factors are relevant to every case, and the existence of even one of the

above listed factors may be sufficient to extend a debtor's exclusivity periods. <u>See, e.g.</u>, <u>Bunch</u>

<u>v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.</u>), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003)

("As always, we emphasize that these are only factors, not all of which are relevant in every case

. . . It is within the discretion of the bankruptcy court to decide which factors are relevant and

give the appropriate weight to each"). Courts routinely grant a debtor's first request for an

extension of the debtor's exclusivity periods. <u>See</u> <u>In re Mirant Corp.</u>, 2004 WL 2250986, at *2

(N.D. Texas 2004) ("The debtor's burden gets heavier with each extension it seeks as well as the

longer the period of exclusivity lasts"); <u>see also</u> In re Apex Pharm., Inc., 203 B.R. 432, 441 (N.D.

Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied"). Here, the relevant factors strongly favor an extension of the Debtors' Exclusive Periods.

50.     Although this is not a particularly large case, the pendency of the multi-million dollar claims of the Debtors' competitor, KPM, a creditor that is not even a trade creditor, has made this case complex and the case remains complex at this stage of the proceedings.

51.     The Plan that ITG has filed is not a complicated Plan.  It dedicates all of its disposable income to paying the claims of creditors over a period of five years with creditors standing to receive significantly more than they would receive in a liquidation under Chapter 7.

52.     While the Debtor is not permitted to solicit consent to its Plan at this stage of the proceedings and while the Debtor has not had any discussions with creditors about its Plan other than in the context of discussing the use of cash collateral with its secured creditors during the infancy of the case, the Debtor has not been made aware of the concerns of any of its creditors and, indeed none of its general unsecured creditors have participated in this case other than Smith Duggan in connection with its employment as special counsel, and KPM in its oppositions to the motions filed by the Debtors in these jointly administered cases.

53.     By declining to consent to having the stay lifted and by objecting to the Applications to employ Smith Duggan, KPM has already caused a waste of time and money in the Debtors' bankruptcy cases and has demonstrated the lengths to which it may be willing to go

to attempt to disrupt and frustrate the Debtors' reorganization efforts in order to put its competitors out of business.[3]

54.     Because of KPM's adverse interest vis-a-vis the Debtor's trade and ordinary course creditors, KPM has been separately classified in ITG's Plan.  ITG anticipates that when it comes time for balloting and filing objections to ITG's Plan, KPM will object, and perhaps be the only objecting creditor thus setting the stage for expensive litigation on the Plan issues.

55.     The confirmation process will be significantly impacted by whether KPM maintains any claims against ITG and whether it has a right to participate in the process.

56.     ITG believes it is prudent, and in the best interest of the Debtors' respective estates, to preserve ITG's exclusive right to have its Plan considered while s the First Circuit resolves the KPM claim in the only jurisdiction in which that claim can be resolved.

57.     Practically, the schedule established by the Disclosure Statement Order itself establishes cause to extend the Acceptance Period.  With the hearing on consideration of the Disclosure Statement scheduled for a mere seven (7) days prior to the expiration of the Acceptance Period, there is no conceivable way that confirmation of the Plan can be considered before the expiration of the Acceptance Period.

58.     Even assuming arguendo that the Disclosure Statement is approved in its current form at the June 22, 2026, hearing, and that the Court immediately directs the service of the Plan, Disclosure Statement, ballots, and related documents, a hearing on confirmation would likely not take place until at least four to six weeks thereafter placing consideration of the Plan well outside the current Acceptance Period.

---

[3]     In making this statement, ITG and its counsel acknowledges and appreciates KPM's cooperation in connection with counsel's family issues when those issues arose.

59. As this case progresses, ITG is complying with its obligations as a debtor-in-possession.

60. As this case progresses, ITG is paying its post-Petition obligations as they come due.

61. As this case progresses, ITG is operating profitably post-Petition.

62. For these reasons, creditors and other parties will not be unduly prejudiced by any delay in the consideration of ITG's Plan that would result from a further extension of the Acceptance Period.

63. In fact, for these reasons, and all of the reasons set forth above, it is in the best interest of ITG's creditors, ITG, and all other parties in interest to extend the Acceptance Period until after the appeal has been resolved.

64. Indeed, in soliciting creditors' ballots, it is important to provide creditors with the most up to date and meaningful information to allow them to evaluate ITG's Plan and their potential recovery in this case. That information will not be available until the appeal has been resolved.

65. Pursuant to 11 U.S.C. § 1121(d)(2)(B), the Acceptance Period may not be extended beyond the date that is "20 months after the date of the order for relief under this Chapter." With the Petition having been filed on August 29, 2025, the limit for extending the Acceptance Period would be April 29, 2027. The requested date of December 31, 2026 is well within the period provided by 11 U.S.C. § 1121(d)(2)(B).

66. ITG will notify the Court and parties in interest of the First Circuit's decision as soon as it has been received and will request a status conference at that time to discuss scheduling for the continuation of the confirmation process.

67.     ITG believes that the requested extension will save the Debtor and other parties in interest significant time and money as it will likely lead to a narrowing of contested confirmation issues.  For that same reason, ITG believes that the requested extension will conserve judicial resources at a time when the Court's workload has increased to the point that the appointment of an additional two judges for this Court has now been authorized.

68.     ITG does not seek this extension for the purpose of unduly delaying these proceedings or for any other improper purpose.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court enter an Order:

A.     Granting this Motion;

B.     Extending the Acceptance Period to and including December 31, 2026; and

C.     Granting such other and further relief as the Court deems necessary or appropriate. Under the circumstances presented.

Respectfully submitted,

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Wolff & Orenstein, LLC
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 250-7232
jorenstein@wolawgroup.com

Counsel for The Innovative Technologies
 Group & Co, LTD

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2026, a copy of the foregoing was served by electronic mail to:

Hugh M. Bernstein, Esq.
Office of the United States Trustee
101 W. Lombard Street
Suite 2625
Baltimore, Maryland 21202
hugh.m.bernstein@usdoj.gov

Carol J. Hulme, Esq.
General Attorney
Baltimore/Richmond Offices
Office of General Counsel
U.S. Small Business Administration
Carol-Ann.Hulme@sba.gov

Michael D. Nord, Esq.
Gebhardt and Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202
mnord@gebsmith.com

Michael Benjamin Brown
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
mbbrown@milesstockbridge.com

Addison Chappell, Esq.
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
achappell@milesstockbridge.com

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
mac@mbvesq.com

I hereby further certify that on the 5th day of June, 2026, a copy of the foregoing was served by first class mail to all parties on the mailing matrix filed in this case.

/s/ Jeffrey M. Orenstein
Jeffrey M. Orenstein