# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10118-RGS

BIOPOINT, INC.

v.

ANDREW DICKHAUT & CATAPULT STAFFING, LLC
d/b/a CATAPULT SOLUTIONS GROUP

MEMORANDUM AND ORDER ON
PLAINTIFF'S BILL FOR
ATTORNEYS' FEES AND COSTS

July 11, 2023

STEARNS, D.J.

Having prevailed on its Chapter 93A Section 2 claim, BioPoint now submits its bill of attorneys' fees and costs. Courts in the First Circuit use the lodestar method to determine a reasonable attorney fee. Mass. Gen. Laws ch. 93A, § 11 ("If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action."). "A court arrives at the lodestar by determining the number of hours productively spent on the litigation and multiplying those hours by

reasonable hourly rates." *In re Thirteen Appeals*, 56 F.3d 295, 305 (1st Cir. 1995).

BioPoint seeks $2,505,394.00 in attorneys' fees and $24,290.27 in costs. In determining whether these amounts are reasonable, the court considers "the nature of the case and the issues presented, the time and labor required, the amount of the damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum v. Archambault*, 379 Mass. 381, 388-389 (1979).

BioPoint seeks fees for 3,690.60 hours of work, including 2,671.2 hours in pre-trial work and 1,019.4 hours in jury trial, bench trial, and post-trial work. This proceeding ran for over three years, included an extensive motions practice, and both jury and bench trials. This case involved complex trade secrets and 93A claims. Given these factors, the court finds the number of hours spent on the matter well within the range of reason. This conclusion is confirmed by looking at comparable matters with a similar course of events and result. *See, e.g.*, *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 2011 WL 1366584, at *10-11 (Mass. Super. Ct. Feb. 10, 2011) (finding 8,250 hours an appropriate number of hours for attorneys seeking fees after

litigating trade secret misappropriation and Chapter 93A claims over the course of over three years).

A table of the fee rates requested by BioPoint is provided below:

| Person | Title (Year Admitted) | Average Billing Rate |
|---|---|---|
| James Bucking | Partner (1991) | $956 |
| Mark Finsterwald | Counsel (2007) | $839 |
| Allison Anderson | Partner (2013) | $741 |
| Madeleine Rodriguez | Partner/Associate (2012) | $718 |
| Rachel Kerner | Associate (2018) | $676 |
| Mary Kate Sexton | Associate (2018) | $576 |
| Erin Olsen | Associate (2016) | $570 |
| Ethan Severance | Associate (2017) | $557 |
| Marissa Mugan | Associate (2021) | $544 |
| Nicholas Bergara | Law Clerk (2023) | $495 |
| Howard Weiss | Associate (2021) | $495 |
| David Zaleznik | Associate (2021) | $489 |
| Carla Nigro | Paralegal | $376 |

Looking at rates for each attorney and considering each attorneys' qualifications and seniority levels, the court finds that the fees are appropriate and comparable to, if not lower than, those charged by similar commercial law firms in the Boston area. *See* Bucking Aff. [Dkt # 233] ¶ 9 (noting that Foley Hoag charges over 20% less than its peer firms); *see also* *Vaks v. LumiraDx, Inc.*, 2021 WL 395565, at *2 (D. Mass. Feb. 4, 2021) (finding hourly rates consistent with AmLaw 100 peer firms, and similar to those here, reasonable). *Compare id.* ¶ 10, *with* Leone-Quick Decl. [Dkt # 233-1] at 5 (comparing 2020 Foley Hoag rates with average Boston AmLaw 100 hourly rates). The rates are also commensurate with the skill of the

Case 1:25-cv-11998 Doc 118-3 Filed 08/19/25 Page 5 of 7

attorneys, whose professional profiles reflect extensive experience and credentials. *See* Anderson Aff. Ex. E [Dkt # 232-5].

Finally, the court finds a $24,290.27 expenditure for costs reasonable, particularly considering the length of the litigation. *See* Anderson Aff. Ex. D [Dkt # 232-4] (invoices itemizing costs sought); *Benchmark Techs., Inc. v. Tu*, 2023 WL 3727913, at *2-3 (D. Mass. May 30, 2023) (finding invoices itemizing charges sufficient for purposes of fee award and awarding $105,104 in costs in a similar matter).

Aside from the reasonableness of the fees, already addressed above, defendants contend that the award should be reduced for several reasons, which the court will address in turn.

First, defendants argue that BioPoint overstaffed the case. However, it does not dispute the overall reasonableness of the hours BioPoint's attorneys billed except for the costs of defending counterclaims and two motions. The number of attorneys assigned to BioPoint's legal team is of no import to the calculation of reasonable fees, absent any showing that the eleven attorneys were conducting overlapping or duplicative work. Indeed, if James Bucking, Allison Anderson, and Madeleine Rodriguez (the three attorneys defendants suggest as a reasonable team) were to have performed all the billed work in

lieu of their associates, they would have sought substantially higher fees because their hourly billing rates are higher.

Second, defendants argue that BioPoint is seeking fees incurred in defending Counterclaims III (tortious interference) and IV (Chapter 93A claim) and that these are unrelated to the claims for which BioPoint is entitled to fees. In these counterclaims, defendants alleged that BioPoint had interfered with Catapult's relationship with Vedanta by filing this suit and accusing it of trade secret misappropriation. BioPoint successfully sought summary judgment on these claims. *See* 7/14/2021 Order. The court finds that the counterclaims are sufficiently related to the core Chapter 93A claim to entitle BioPoint to fee compensation – defendants' trade secret misappropriation lays at the center of the entire litigation.

Third, defendants argue that BioPoint seeks fees for motions that it lost. Defendants argue that BioPoint sought $60,000 in fees to oppose Attis's motion to dismiss, which it lost. However, BioPoint filed a combined opposition to two motions to dismiss, *see* Opp'n to Defs.' Mots. to Dismiss [Dkt # 36], Attis's as well as Catapult and Dickhaut's combined. The opposition devotes a short section to an argument unique to Attis's case, but the bulk of the document addresses defendants' motion to dismiss, which was denied by the court. Given the joint nature of the opposition, the court

will decline to reduce these fees. Defendants also argue that BioPoint erroneously sought $56,000 for opposing their motion to exclude damages calculations that were not disclosed during discovery. Although BioPoint's time entries could be clearer, there were other motions in limine filed at and around that time. *See, e.g.* Pl.'s Mot. in Limine to Exclude Drug Evidence [Dkt # 113]. Additionally, the time entries defendants seek to have deducted include other pretrial matters, such as witness preparation, drafting demonstratives, and working up BioPoint's opening statement. The court will therefore deduct only the amounts identified by BioPoint as concerning the motion in limine to exclude damages calculations not provided by BioPoint in discovery, that is, $1,937.

In sum, the court will award BioPoint $2,503,457.00 in attorneys' fees and $24,290.27 in costs, plus pre- and post-judgment interest as specified in its 7/11/2023 Electronic Order [Dkt # 249].